SANHO COLLECTIONS, LIMITED,
Plaintiff,

v.

Robert E. CHASEN, Commissioner of Customs, Arthur Garel, Acting Chairman, Committee for the Implementation of Textile Agreements, and the United States of America, Defendants.

No. 80–11–00039.

United States Court of International Trade.

Nov. 14, 1980.

Cleary, Gottlieb, Steen & Hamilton, New York City (James W. Lamberton and Jonathan I. Blackman, New York City, of counsel) and Siegel, Mandell & Davidson, New York City (Stephen S. Weiser, New York City, of counsel), for plaintiff.

Alice Daniel, Asst. Atty. Gen., Washington, D. C., Joseph I. Liebman, Attorney in Charge, Field Office for Customs Litigation, New York City (James A. Resti, New York City, Trial Atty.), for defendants.

NEWMAN, Judge:

The recent enactment (effective November 1, 1980) of the wide-ranging Customs Courts Act of 1980, granting substantially additional jurisdiction to the new United States Court of International Trade, inevitably will give rise to numerous areas of

litigation. Indeed, this matter of first impression is typical.

This is an action for preliminary and permanent injunctive relief to restrain defendants from implementing a reduction in an import quota by the Committee for the Implementation of Textile Agreements ("CITA") respecting certain sweaters from the Republic of Korea. On the merits, plaintiff challenges the legality of CITA's reduction in the sweater import quota.

Presently before this Court is plaintiff's application for an order to show cause why a temporary restraining order ("TRO") and preliminary injunction *pendente lite* should not be issued under rule 65 of the Rules of this Court to restrain and enjoin defendants from prohibiting the entry into the United States of plaintiff's sweaters, pursuant to the contested quota reduction.

For the reasons indicated hereinafter, plaintiff's application is denied, and this action is dismissed in part.

I.

Accepting the averments of fact in the verified complaint as true, and the affidavits submitted on behalf of plaintiff in their most favorable light, as for the present purposes we must, the basic facts underlying this action may be summarized as follows:

Under the terms of the Agricultural Act of 1956, 7 U.S.C. § 1854, the President is authorized to negotiate agreements with foreign governments limiting the importation of textile products into the United States, and to issue regulations governing the entry of such products in order to carry out any agreements made. By Executive Order 11651 dated March 3, 1972, as amended by Executive Order 11951 dated January 6, 1977, the President's authority under 7 U.S.C. § 1854 to implement textile trade agreements entered into pursuant to the statute has been delegated to CITA, which agency is further authorized to issue instructions to the Commissioner of Customs to take such actions respecting the entry of textile products into the United States as are necessary to carry out such agreements.

This action involves the Bilateral Cotton Wool and Man-made Fiber Textile Agreement, T.I.A.S. 9039 ("Textile Agreement") between the United States and the Republic of Korea. This agreement, executed on December 23, 1977, provides *inter alia*, for quotas or "Specific Limits" for various categories of textile products for each year during its term. Among the articles covered by the Textile Agreement are men's and women's sweaters made of cotton or man-made fibers (Category 645/646).

Under the terms of the Textile Agreement, the sweaters in Category 645/646 are subject to Specific Limits for each year of the agreement, which are set forth in Annex B thereto. Additionally, the agreement provides for "Flexibility" provisions which allow its Specific Limits to be exceeded in the course of any year in accordance with various criteria (Agreement, Sec. 3). Thus, the agreement provides for increases in the Specific Limit for Category 645/646 for any given year through "carryovers" of unfilled portions of previous years' quotas and "carryforwards" of portions of succeeding years' quotas (Agreement, Sec. 9), and provides for additional percentage increases of 6% in any given year (Agreement, Sec. 8). The Textile Agreement, however, does not expressly contain provisions for reduction of the Specific Limit for Category 645/646, or any other category, during the course of a particular year.

Under the Textile Agreement, the Specific Limit for sweaters in Category 645/646 for 1980 was set at 2,976,181 dozen, and thereafter increased by an amendment to the Agreement, T.I.A.S. 9566 (August 24, 1979), to 3,009,062 dozen, subject to the provisions for further increases that the Agreement contains. On December 20, 1979, CITA issued a directive implementing this figure, and stating that the restraint level for the forthcoming year 1980 for sweaters in Category 645/646 would be 3,009,062 dozen as the Agreement provided. 44 FR 76573 (December 27, 1980).

That directive contained a specific reference to the flexibility provisions of the Textile Agreement, stating:

"The levels of restraint set forth above are subject to adjustment in the future pursuant to the provisions of the bilateral agreement of December 23, 1977, as amended, between the Governments of the United States and the Republic of Korea which provide in part, that: (1) Within the aggregate and applicable group limits, specific levels of restraint may be exceeded by designated percentages; (2) these same levels may be increased for carryover and carry forward up to 11 percent of the applicable category limit; (3) consultation levels may be increased within the aggregate and applicable group limits upon agreement between the two governments; and (4) administrative arrangements or adjustments may be made to resolve minor problems arising in the implementation of the agreement."

Nothing in the December 20, 1979 directive referred to any possible reduction in the 1980 restraint levels.

Plaintiff made its import arrangements for 1980 in accordance with the December 20, 1979 directive. It was able to do so predicated on Korea's system of export control, under which Korea implements the Specific Limits enumerated in the Textile Agreement from its own end by allocating production among manufacturers, and only issuing visas for export up to the level set forth in the Agreement. Relying upon the December 20, 1979 directive and this allocation mechanism, plaintiff entered into contracts during June and July 1980 to purchase a total of 233,340 sweaters in Category 645/646 from Korean exporters, at an aggregate price of over $1 million, for importation into the United States. During July and August 1980 plaintiff proceeded to enter into agreements to resell these sweaters to American customers, for ultimate resale in the United States. By the end of September 1980, certain of these sweaters had been received by plaintiff, imported into the United States, and entered through customs; but the majority were still in the process of being transported to the United States. All of them had been manufactured by the end of September, 1980 or were in the process of manufacture. This was in accordance with the usual custom of the trade whereby garments to be sold for the Christmas season are in an advanced state of manufacture in September, are delivered to the United States importer by the end of October, and are redelivered by the importer to its customers by mid-November.

On September 23, 1980 CITA issued a directive in the form of a letter from the Acting Chairman of CITA to the Commissioner of Customs, 45 FR 63897 (Sept. 26, 1980). This directive was issued without any prior notice and without affording any opportunity for comment or hearing to any person. It purports to reduce retroactively the 1980 Specific Limit for sweaters in Category 645/646 from 3,009,062 dozen, as set forth in CITA's December 20, 1979 directive and the Textile Agreement, to only 2,717,311 dozen, and directs the Commissioner of Customs to prohibit the entry of any sweaters in excess of this reduced amount. The CITA directive referred to the Government of Korea's consent to the reduction in the import restraint level.

As directed by CITA's September 23, 1980 promulgation, the Customs Service proceeded to implement the new reduced quota level. On November 7, 1980, officials of the Customs Service announced that as of 8:49 A.M. (EST) on November 4, 1980 the Specific Limit for Category 645/646, as reduced to 2,717,311 dozen by CITA's September 23, 1980 directive, had been filled; and thereupon Customs excluded from entry into the United States any further sweaters then in the process of importation. At that time, plaintiff had 1,752 dozen sweaters in Category 645/646 awaiting entry at JFK International Airport in New York, and a further 7,551 dozen sweaters in this category awaiting shipment in Seoul, Korea. All of these sweaters have been paid for (or are subject to irrevocable letters of credit permitting payment to be demanded at any time) and had already been sold to various customers in the United States. The Customs Service has indicated to plaintiff it will deny entry to any sweaters that plaintiff attempts to enter during 1980.

## II.

In connection with plaintiff's application, which was filed on November 10, 1980 at 4:31 P.M., the eve of a national "holiday", a conference was immediately held in Chambers on the same date from approximately 4:35 P.M. to 6:15 P.M., at which time counsel for the respective parties presented oral arguments in support of their positions. In view of plaintiff's emergent situation, the Court advised counsel that it would promptly issue an order and give this action precedence over all other pending matters. Based upon plaintiff's moving papers (defendant expressly declined at that time an opportunity to submit opposing papers), and the oral arguments, the contentions of the parties are as follows:

Plaintiff contends: First, CITA's action is invalid because that agency failed to comply with the rule-making provisions of the Administrative Procedure Act (5 U.S.C. § 553) or otherwise provide notice and opportunity to comment before reducing the import restraint level. Second, CITA's action in suddenly ordering a sharp reduction in the import level about three months prior to ending of the year, after previously setting this level in accordance with the Textile Treaty and effectively representing that it was subject to upward modification only, was arbitrary and capricious. Finally, CITA's promulgated action exceeds its own legal authority, since it is not authorized by anything in the Textile Treaty that CITA is purporting to apply.

Plaintiff maintains that it should be granted extraordinary relief in the form of a TRO and preliminary injunction *pendente lite* since plaintiff is likely to succeed on the merits (or there are at least serious questions going to the merits), and without such relief plaintiff will suffer irreparable injury. Concerning the question of irreparable injury, plaintiff asserts that if these sweaters are denied entry until the opening of the import level for next year, they will lose most of their value; that such denial would render plaintiff unable to fulfill its contractual commitments; that plaintiff will be exposed to liability for damages from its American customers, as well as sustaining grave and irreparable injury to its good name and business reputation; and that none of these injuries will be compensable by money damages, since all stem directly from official action in lowering the quota for sweaters from Korea.

Defendants' position is that since plaintiff has failed to exhaust its administrative remedies, as required by 28 U.S.C. § 2637, judicial review is premature at this juncture, and hence the court presently lacks jurisdiction. Specifically, defendant insists that if plaintiff's sweaters have been or are denied entry under the restraint level, plaintiff must first seek an administrative review by filing a protest pursuant to 19 U.S.C. § 1514, and plaintiff can request an accelerated disposition of the protest under 19 U.S.C. § 1515(b). Counsel for defendants have expressed no views concerning the merits of the action, but dispute plaintiff's claim of irreparable injury.

For the reasons indicated hereinafter, this action is dismissed in part as premature, without prejudice to renewal, and plaintiff's application for a TRO and preliminary injunction is denied.

## III.

■ Respecting the 1,752 dozen sweaters which were imported from Korea through the JFK International Airport and were denied entry by Customs under the quota reduction, obviously there was a protestable action by Customs prescribed under 19 U.S.C. § 1514(a)(4), and thus plaintiff has an administrative remedy. In accordance with 28 U.S.C. § 2637, it is "appropriate" that this Court "require the exhaustion of administrative remedies". Therefore, concerning the merchandise excluded from entry at the JFK Airport, this action is presently not ripe for judicial review and must be dismissed in part, without prejudice to renewal after plaintiff has exhausted its administrative remedies.

■ However, as to the additional 7,551 dozen sweaters awaiting shipment in Seoul, Korea, there is presently no protestable ad-

ministrative action pursuant to § 1514 and thus no administrative remedy. This Court unquestionably has subject matter jurisdiction under 28 U.S.C. § 1581(i)(3) and (4) without administrative review. Consequently, plaintiff is properly in Court at this time regarding the sweaters awaiting shipment in Korea, which Customs has indicated will not be allowed entry during 1980.

We come, then, to a consideration of whether plaintiff has shown sufficient grounds warranting the exercise of the Court's powers to grant the extraordinary relief requested.

As provided by 28 U.S.C. § 1585, "The Court of International Trade shall possess all the powers in law or equity of, or as conferred by statute upon, a district court of the United States". Moreover, it should be stressed that under 28 U.S.C. § 2643 this Court, with certain limitations, is expressly empowered to grant injunctive relief.

■ The courts have long recognized that, fundamentally, preliminary injunctive relief is an "extraordinary remedy", *Asher v. Laird*, 475 F.2d 360, 362 (D.C.Cir.1973) and should be granted only upon a clear showing that the moving party is entitled to the relief requested. *Flintkote Co. v. Blumenthal*, 469 F.Supp. 115, 126–27 (N.D.N.Y.1970), *aff'd.* 569 F.2d 51 (2d Cir. 1979).

In *Asher v. Laird, supra,* 475 F.2d at 362, the Court of Appeals succinctly observed:

The granting of such extraordinary relief [a preliminary injunction] is a matter of the trial court's discretion as guided by a standard consisting of the following familiar factors: (1) Has the plaintiff made a strong showing that it is likely to prevail on the merits of the appeal?; (2) Has the plaintiff shown that without such relief it would be irreparably injured?; (3) Would the issuance of the injunction substantially harm other parties interested in the proceedings?; (4) Where lies the public interest?

See also the excellent discussion in *Re, Cases and Materials in Equity and Equitable Remedies* (1975), Chapter XIX, Section 1.

After full consideration of the factors enumerated above in *Asher,* in conjunction with all the facts and circumstances adduced by plaintiff, I am constrained to conclude that plaintiff's application for the extraordinary relief sought should be denied.

■ Without prejudice to reaching a possibly contrary result when the merits of this action are fully considered, I find that plaintiff did not clearly demonstrate a substantial likelihood of success on the merits for purposes of an inquiry into the propriety of a preliminary injunction. Without such demonstration, plaintiff did not meet its burden and it would be inappropriate to grant a TRO or preliminary injunction which could possibly be interpreted as casting doubts upon the propriety of CITA's reduction in the import quota, so vigorously contested by plaintiff in this action. It must be emphasized that the granting of the TRO and preliminary injunction under the circumstances in this case would give plaintiff the ultimate or much of the relief which it hopes to attain by prevailing on the merits. Moreover, the valid public interest in a policy of quantitative import restrictions on textile products is entitled to great weight.

IV.

On November 13, 1980, at 5 o'clock p. m., an affidavit executed by James A. Resti, a trial attorney in the Department of Justice assigned to this case, was received by the Court. At that point in time, this opinion had been prepared and was in the final stages of typing. Nevertheless, the affidavit has been made part of the record and reviewed by the Court, but nothing contained therein alters the result reached in this opinion.

In substance, the affidavit reveals that the Government of Korea has asserted a claim that there exists a statistical discrepancy between the number of sweaters in Category 645/646 exported from Korea, and the number of sweaters imported into the United States numbering 55,448 dozen; that pending a determination of this discrepancy, CITA has decided to *increase* the

specific limit in Category 645/646 by 55,448 dozen; that as an interim measure CITA will lift the embargo currently in effect pending resolution of the discrepancy which may exist in the statistics; that notice of this increase will be published (subsequent to the promulgation of this opinion and order) in the *Federal Register* of Monday, November 17, 1980; and that Customs will lift the current embargo on November 18, 1980.

Defendant argues that the effect of CITA's decision is that, as of the effective date of raising the specific limit and the lifting of the embargo, there will exist no case or controversy due to the fact that the quota in question will be open; that only when the additional quota is filled will the threat of irreparable injury to plaintiff occur; and that it would be inappropriate to grant provisional relief in the form of a TRO or preliminary injunction within four days of the lifting of the embargo.

### V.

The Court wishes to commend plaintiff's counsel, Messrs. Jonathan I. Blackman and Stephen S. Weiser, for the superb job performed in this case, particularly in view of the emergent situation; and further, to commend all counsel for their excellent presentation in the extensive oral arguments, all in the best traditions of our profession.

For the foregoing reasons, it is hereby ORDERED:

1) This action is dismissed in part for lack of jurisdiction respecting 1,752 dozen of plaintiff's sweaters imported from Korea, the entry of which merchandise into the United States was denied by the Customs Service. Such dismissal is without prejudice to renewal of the action after plaintiff has exhausted its administrative remedies pursuant to 28 U.S.C. § 2637.

2) Plaintiff's application for a TRO and preliminary injunction is denied.