UNITED STATES, PLAINTIFF *v.* BAVARIAN MOTORS, INC., ALFRED GEBHARDT, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, AETNA CASUALTY AND SURETY COMPANY, AND BAVARIAN MOTORS INTERNATIONAL, DEFENDANTS

Court No. 81-12-01684

Before MALETZ, *Judge.*

(Dated: August 19, 1982)

*J. Paul McGrath,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch *(Jerry P. Wiskin* on the brief) for the plaintiff.

*Sandler & Travis (Robert I. Targ* on the brief), for defendant St. Paul Fire and Marine Insurance Company.

*C. Rabon Martin* for defendants Bavarian Motors International, Alfred Gebhardt, and Aetna Casualty and Surety Co.

MALETZ, *Judge:* This is an action pursuant to 28 U.S.C. 1582(2) (1980) [1] for the collection of liquidated damages arising from the

---

[1] § 1582 *Civil actions commenced by the United States*

importation between 1975 and 1977 of BMW automobiles which did not conform with the Clean Air Act of 1955, as amended, 42 U.S.C. 7401 et seq. (1976, Supp. III). Before the court are defendants' motions to dismiss or for summary judgment, and the Government's opposition and cross-motion for an order deeming all of the relevant allegations of its complaint admitted as to defendant Aetna Casualty and Surety Company (Aetna).

## I

Bavarian Motors, Inc. (BMI) and its chief executive officer, Alfred Gebhardt, imported various BMW automobiles into the United States from Germany. Vehicles imported into the United States are required, pursuant to 19 C.F.R. 1273(b) (T.D. 72–45),[2] to be accompanied by a statement regarding the status of the vehicle under the Clean Air Act. Upon the importation of the subject entries, the above defendants advised Customs, pursuant to 19 C.F.R. 1273(b)(5)(x) (T.D. 72–45),[3] that the imported cars were not covered by a certificate of conformity with Federal motor vehicle emission standards. These defendants stated that the cars would be brought into conformity with the clean air standards and that the vehicles were being imported under bond, as provided under 19 C.F.R. 1273(c) (T.D. 72–45).[4]

Defendants St. Paul Fire and Marine Insurance Company (St. Paul) and Aetna were sureties to BMI on the subject importations. When the appropriate bonds were obtained by BMI and Gebhardt, the vehicles were released by Customs into their custody with ninety days to conform the vehicles and notify Customs of that

---

The Court of International Trade shall have exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States—
* * * * *
(2) to recover upon a bond relating to the importation of merchandise required by the laws of the United States or by the Secretary of the Treasury; * * *

[2] § 12.73. *Federal Motor vehicle air pollution control*
* * * * *
(b) *Requirements for entry and release.* Each motor vehicle or motor vehicle engine offered for importation or imported into the Customs territory of the United States shall be refused entry unless there is filed with the entry, in duplicate, a declaration verified by the importer or consignee which contains:
* * * * *
(5) A statement that—
(i) Such 1968, 1969, or 1970 model year motor vehicle or motor vehicle engine is covered by a certificate of conformity with Federal motor vehicle standards; or
* * * * *
(iii) Such 1971 or subsequent model year motor vehicle or motor vehicle engine is covered by a certificate of conformity with Federal motor vehicle emission standards and is tagged or labeled in accordance with applicable regulations in 40 CFR Part 85; . . .

[3] (x) Such motor vehicle or motor vehicle engine is not covered by a certificate of conformity with Federal motor vehicle emission standards but will be brought into conformity with such standards and is being imported under bond in accordance with 40 CFR 85.203; * * *

[4] (c) *Release under bond.* If a declaration filed in accordance with paragraph (b) of this section states that the entry is being made under circumstances described in paragraph (b)(5) * * * (x) * * * of this section, the entry shall be accepted only if the importer or consignee gives a bond . . . for the production of a declaration that the vehicle is in conformity with Federal emission standards. . . . Within 90 days after such entry, or such additional period as the district director of Customs may allow for good cause shown, the importer or consignee shall deliver to the district director the prescribed declaration. If the declaration is not delivered to the district director of Customs for the port of entry of such vehicles or engines within 90 days of the date of entry or such additional period as may be allowed by the district director, for good cause shown, the importer or consignee shall deliver or cause to be delivered to the district director of Customs those motor vehicles or motor vehicle engines which were released in accordance with this paragraph. In the event that any such motor vehicle or motor vehicle engine is not redelivered within 5 days following the date specified in the preceding sentence, liquidated damages shall be assessed in the full amount of a bond given on Form 7551. * * *

fact. Defendants failed to do so, and Customs issued Notices of Re-delivery to BMI. When the cars were not redelivered, Customs, on June 6, 1978, issued Notices of Liquidated Damages to BMI with copies to St. Paul pursuant to 19 C.F.R. 141.113(g) (T.D. 74–227) and 172.1 (T.D. 70–249).[5] These Notices set forth the type of bond breached by name and form number, the amount of the bond, the name of the principal, the specific vehicles covered by the enumer-ated entry, and the name and identification number of the surety. Each recipient was advised that it could file a petition for relief. On the notice received by St. Paul was printed the notation "IN-FORMATION COPY ONLY, THIS IS NOT A DEMAND FOR PAY-MENT."

By letter dated July 5, 1978, St. Paul requested copies of the rele-vant entries and bonds, but alleges that it never received a reply from Customs. St. Paul did not petition for relief, but the principal, BMI, filed a petition for remission on July 26, 1978, commencing an administrative review process of some three years, culminating in mitigation of the Government's claim followed by the institution of billing procedures against BMI on April 24, 1981. St. Paul claims it received no notice of these proceedings and consequently did not participate.

By letter dated December 2, 1981 to St. Paul, Customs demanded payment of the full amount of each bond as liquidated damages within ten days of its receipt. On December 15, 1981, St. Paul re-quested additional information and documentation of the liquidat-ed damages claim. That same day, the Government commenced this action. Bavarian Motors International, Inc. (BM Int'l) and its chief executive officer, also Alfred Gebhardt, were alleged by the Government to have received all of the assets of BMI and, for that reason, were made parties to the lawsuit. On February 19, 1982, St. Paul filed a protest with regard to the damage claims. That protest has not yet been heard.

## II

The demand by Customs on St. Paul seeking payment within ten days of liquidated damages incurred by BMI was mailed on Decem-ber 2, 1981. This was the first demand for payment upon St. Paul.

A demand against a surety for payment against its bond gives rise to a right to protest that decision. Thus, section 514(c)(2) of the Tariff Act of 1930 (19 U.S.C. 1514(c)(2)), as amended by section 1001 of the Trade Agreements Act of 1979 (Pub. L. 96–39, 93 Stat. 305)

---

[5] § 141.113. *Recall of merchandise released from Customs custody.*

(g) * * * When the demand of the district director for return of merchandise to Customs custody is not complied with, liquidated damages shall be assessed.

§ 172.1. *Notice of liquidated damages incurred and right to petition for relief.*

(a) * * * When there is a failure to meet the conditions of any bond posted with Customs, the principal shall be notified in writing of any liability for liquidated damages incurred by him and a demand shall be made for payment. The sureties on such bond shall also be advised in writing, at the same time as the principal, of the liability for liquidated damages incurred by the principal.

(b) *Notice of right to petition for relief.* The notice shall also inform the principal and his sureties on the bond that application may be made for relief from payment of liquidated damages. * * *

provides that "[a] protest by a surety which has an unsatisfied legal claim under its bond may be filed within 90 days from the date of mailing of notice of demand for payment against its bond." This amendment to the Tariff Act of 1930 reflected Congressional concern with the frequency with which sureties did not receive notice of their principal's failure to pay duties until after the time for filing a protest had expired. S. Rep. No. 96–249, 96th Cong., 1st Sess. 254 (1979).

Similarly, Customs regulations provide that "protests shall be filed, in accordance with section 514, Tariff Act of 1930, as amended (19 U.S.C. 1514), within 90 days after * * * the date of mailing of notice of demand for payment against a bond in the case of a surety which has an unsatisfied legal claim under a bond written by the surety." 19 C.F.R. 174.12(e) (T.D. 80–271). Through its letter of December 15, 1981, and its formal protest of February 19, 1982, St. Paul has satisfied the statutory time limitations, but no administrative action has been taken prior to or during the pendency of this proceeding.[6]

Exhaustion of administrative remedies is generally a prerequisite to judicial review. 28 U.S.C. 2637(a)(d) (1980).[7] "This reason is particularly pertinent where the function of the agency and the particular decision sought to be reviewed involve exercise of discretionary powers granted to the agency by Congress, or require application of special expertise." *McKart* v. *United States,* 395 U.S. 185, 194 (1969). The administrative review by Customs of an importer's protest is obviously a condition precedent to his commencement of a judicial proceeding. See *Wear Me Apparel Corp.* v. *United States,* 1 CIT 194, 198, 511 F. Supp. 814, 818 (1981); *Sanho Collections, Ltd.* v. *Chasen,* 1 CIT 6, 11, 505 F. Supp. 204, 207 (1980). This requirement is no less applicable to the Government. "Although the situation presented by this case, of an agency seeking enforcement of administrative action prior to completion of the administrative review process, is much less common, there is no reason for a different standard to prevail." *United States* v. *Desiree International, U.S.A.,* 497 F. Supp. 264, 269 (S.D.N.Y. 1980).

In its present posture, the Government's suit against St. Paul is thus premature. Accordingly, the action is dismissed as to St. Paul, without prejudice. *Desiree International, id.*

---

[6] Indeed, the Government concedes that the filing of this lawsuit before the expiration of the 90 day protest period was necessary to avoid potential statute of limitations problems.

[7] § 2637. *Exhaustion of administrative remedies*

(a) A civil action contesting the denial of a protest under section 515 of the Tariff Act of 1930 [19 USCS § 1515] may be commenced in the Court of International Trade only if all liquidated duties, charges, or exactions have been paid at the time the action is commenced, except that a surety's obligation to pay such liquidated duties, charges, or exactions is limited to the sum of any bond related to each entry included in the denied protest.

* * * * * * *

(d) In any civil action not specified in this section, the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies.

## III

Defendant Gebhardt moves to dismiss or alternatively seeks summary judgment. His first claim is that he was not a party to the bonds, but merely acted as agent for BMI. All that is before the court in support of this claim is a factual assertion of counsel. This has no probative value. See *South Corp.* v. *United States*, 3 CIT 28, 33, 531 F. Supp. 180, 184 (1982), and cases cited.

Gebhardt next argues that the action is barred by the three year statute of limitations for claims founded in tort. See 28 U.S.C. 2415(b) (1976). However, this proceeding arises out of the breach of a surety bond by defendant BMI—and suretyship arises only in contract. Stearns, *The Law of Suretyship*, 1915, at 2. An action for damages founded in contract is governed by a six year statute of limitations. 28 U.S.C. 2415(a) (1976). The record indicates that the action has been commenced within the statutory time period. Accordingly, defendant Gebhardt's motion to dismiss or alternatively for summary judgment must fail.

## IV

BM Int'l, too, moves to dismiss or, in the alternative, for summary judgment. It claims that it was not a party to the subject bonds and has not received assets from defendant BMI and is a separate and distinct entity. Again, all that is before the court in support of this claim is a flat assertion by counsel—which has no probative weight. Thus its motion to dismiss or alternatively for summary judgment must be denied.

## V

Defendant Aetna, in its answer, asserts that it has been discharged as a matter of law and moves to incorporate by reference the grounds set forth in the motion of defendant St. Paul to dismiss or, in the alternative, for summary judgment. The Government in turn cross-moves for an order deeming the allegations of its complaint admitted to the extent they are applicable to defendant Aetna on the ground that Aetna has failed to file a responsive pleading either admitting or denying the allegations of the complaint.

It is true that rule 10 of this court provides that "statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion." But here, Aetna's motion—in contrast with St. Paul's—fails to provide the court with any factual basis in support of its claim or to indicate why it should be treated the same as St. Paul.

Given this situation, Aetna's motion for incorporation is denied. However, in the interest of justice, Aetna is allowed 30 days within which to file an amended answer or a proper motion in conformance with the rules of this court. The Government's cross-motion

for an order deeming the allegations of its complaint admitted as to Aetna is denied.

## VI

In summary, the court orders:

1. The Government's action against St. Paul is dismissed, without prejudice, as premature;

2. Defendant Gebhardt's motion to dismiss or, in the alternative, for summary judgment is denied;

3. Defendant BM Int'l's motion to dismiss or, in the alternative, for summary judgment is denied;

4. Aetna's motion for incorporation is denied, and the Government's cross-motion for an order deeming the allegations of its complaint admitted as to Aetna is also denied; and

5. Aetna is allowed 30 days to file an amended answer or a proper motion in conformance with the rules of this court.