**M.W. KASCH CO. and the Tsaisun Inc. d/b/a JRL Toys, Plaintiffs,**

v.

**The UNITED STATES and William Von Raab, Commissioner of Customs, Defendants.**

No. 86–05–00579.

United States Court of International Trade.

July 10, 1986.

Grunfeld, Desiderio, Lebowitz & Silverman (Robert B. Silverman and Michael P. Maxwell), New York City, for the plaintiffs.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, U.S. Dept. of Justice, New York City, for the defendants.

*Opinion & Order*

AQUILINO, Judge:

The plaintiffs commenced this action to obtain the release of goods detained by the U.S. Customs Service and to enjoin the Commissioner of Customs "from issuing a determination that the copyright registration for JRL Toys for its 'LONELY PUPPY' is invalid or that the 'LONELY PUPPY' is a piratical copy of Tonka Corp.'s copyrighted 'POUND PUPPY'", to quote from their complaint's prayer for relief.

### Background

According to the complaint, M.W. Kasch Co. is the importer of record of the merchandise at issue herein. The Tsaisun Inc. d/b/a JRL Toys ("JRL") is alleged to have created the "Lonely Puppy", which is characterized as a stuffed-animal toy derived from JRL's "Napping Beagle". A Certificate of Copyright Registration was issued for the Lonely Puppy in or about March 1986.

Prior thereto, however, the complaint alleges that Tonka Corporation registered a copyright in February 1985 for a "stuffed dog marketed as the POUND PUPPY" (para. 7); that in July Tonka filed an application to record its copyright with Customs (para. 8); that JRL requested in October a Service ruling that the Lonely Puppy does not infringe Tonka's copyright (para. 11); that in November Tonka commenced an action against JRL in the United States District Court for the District of Minnesota, Third Division, Civil File No. 3–85–1885, alleging copyright infringement (para. 13); that Customs recorded Tonka's copyright in December (para. 14); and that in February 1986 the Service seized shipments of JRL's toy (paras. 15, 16).

JRL sought injunctive relief from the district court. However, the judge entered an order, denying the requested relief and stating, in part:

> ... Any challenge to the authority of Customs to act under 19 C.F.R. §§ 133.-41–.45 or to the conduct of Customs under such regulations is perhaps more appropriately addressed to the Court of International Trade in which exclusive jurisdiction of such matters is vested. *See* 28 U.S.C. § 1581.

On March 18, 1986, JRL filed a protest pursuant to Section 514 of the Tariff Act of 1930 with the office of the Customs District Director, Milwaukee District, which had seized the shipments in question. According to an affidavit of the Acting District Director, on March 21, 1986 "the seizures were cancelled and changed to detentions in accordance with 19 C.F.R. 133.-43." [1] The affidavit further indicates that Tonka was notified of the detentions and that

> [b]y letter dated April 25, 1986, Tonka Corp. properly transmitted the necessary bonds, totalling $120,000.00, to preclude release of the merchandise in accordance with 19 C.F.R. 133.43(c)(1).... The bond amount represents the entered value of the merchandise available for detention as of February 25, 1986. Tonka's letter dated April 29, 1986 provided a written demand for exclusion from entry of the imported articles.[2]

Finally, the affidavit states that JRL and Tonka were notified that they had until May 13, 1986 "to submit further evidence concerning the claim of piratical copying" [3] and that the file was then transmitted to Washington "for a decision on the disputed claim ... in accordance with 19 C.F.R. 133.-43." [4]

The plaintiffs commenced this action, alleging jurisdiction pursuant to 19 U.S.C. § 1581(a) and making an immediate application for a preliminary injunction. The defendants countered with a motion to dismiss on the ground of lack of subject-matter jurisdiction.

### I

At the hearing held on the motions, the plaintiffs abandoned any request for immediate release of the merchandise already

---

1. Section 603(c) of Title 17, U.S.C. states that "[a]rticles imported in violation of the importation prohibitions of this title are subject to seizure and forfeiture in the same manner as property imported in violation of the customs revenue laws." Subsection (a) of 19 C.F.R. § 133.43 provides, in part:

   ... If the district director has any reason to believe that an imported article may be a piratical copy of a recorded copyrighted work, he shall withhold delivery....

2. Affidavit of Paul N. Draeger, Jr., para. 13 (May 15, 1986) (citations omitted).

3. *Id.*, para. 14.

4. *Id.*, para. 15.

under detention.[5] Rather, as articulated by counsel, the plaintiffs "seek to prevent Customs from detaining future imports of merchandise, or entering into the question of copyright validity." Tr. at 12. In other words, the relief sought is "[j]ust the status quo, pending the District Court proceedings." *Id.* at 14.

This court is not persuaded that it has jurisdiction to grant the preliminary relief requested. That is, the Tariff Act of 1930, 19 U.S.C. § 1514, does not provide for the filing of protests as to future entries. *See, e.g., Sanho Collections, Limited v. Chasen*, 1 C.I.T. 6, 505 F.Supp. 204 (1980); *Wear Me Apparel Corporation v. United States*, 1 C.I.T. 194, 511 F.Supp. 814 (1981). On the other hand, the Customs Courts Act of 1980, 28 U.S.C. § 1581(i), granted this Court of International Trade residual jurisdiction over import matters, including prospective entries. *See, e.g., Vivitar Corporation v. United States*, 7 C.I.T. 170, 585 F.Supp. 1419 (1984). But this grant cannot be used to bypass administrative review by meaningful protest—unless the available remedy is manifestly inadequate. *Compare United States v. Uniroyal, Inc.*, 69 CCPA 179, 687 F.2d 467 (1982), *with United States Cane Sugar Refiners' Association v. Block*, 69 CCPA 172, 683 F.2d 399 (1982).

In this action, Customs has detained plaintiffs' merchandise, and they have protested, as contrasted with *Vivitar*, where the Service refused to exclude merchandise bearing the plaintiff's trademark, thereby leaving that allegedly aggrieved markholder without ground to protest pursuant to 19 U.S.C. § 1514. *See* 585 F.Supp. at 1424–25. Thus, the traditional administrative remedy afforded by the Tariff Act of 1930, with subsequent judicial review under 28

U.S.C. § 1581(a), was manifestly inadequate. Such is not the case here.

Furthermore, in *Vivitar* it was clear from the language of Customs' own regulation, 19 C.F.R. § 133.21(c), and from the Service's performance thereunder that so-called gray-market goods would not be seized pursuant to statutory authority, 19 U.S.C. § 1526. *See generally Vivitar Corporation v. United States*, 8 C.I.T. 109, 593 F.Supp. 420 (1984), *aff'd*, 761 F.2d 1552 (Fed.Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986). In this action, the future performance of Customs is not nearly so predictable. On the one hand, the controlling Service regulation, 19 C.F.R. § 133.43(a), is broad, and the plaintiffs have produced a copy of a Customs communication dated March 13, 1986 to all District Directors to the effect that a copyright certificate obtained *after* importation (and seizure) of merchandise will not be accepted as "conclusive proof of original authorship".[6] On the other hand, in its denial of their protest, the Service assured the plaintiffs that "[e]ach [future] shipment imported will be reviewed on an individual basis, and only then would a determination be made whether the articles would be detained"[7] and that the detention was "limited" to the goods already seized. Moreover, complainant Tonka posted bonds to cover those shipments, and there is no reason to doubt that Customs will abide by its regulation, 19 C.F.R. § 133.43(b)(2), requiring security for any detention of future JRL imports. Finally, counsel stated at the hearing herein that trial of the Minnesota action would take place in July 1986.

In sum, the current circumstances of this action constitute no more of a factual basis for the grant of extraordinary equitable relief than does 28 U.S.C. § 1581(a) provide a proper jurisdictional predicate. Plain-

---

**5.** *Compare* plaintiffs' Motion for a Preliminary Injunction with Tr. at 4, 12 and 14.

**6.** Plaintiffs' Exhibit H. Here, JRL received its copyright certificate (under statutory threat of criminal sanction for false representation, 17 U.S.C. § 506(e)) after Customs had seized its goods, but the plaintiffs have apparently determined to permit the detention of that merchan-

dise to run its course. In fact, Exhibit H simply states that the procedures provided in 19 C.F.R. §§ 133.42 and 133.43, as appropriate, will be followed.

**7.** Draeger Affidavit, Exhibit 2 (letter from District Director dated April 9, 1986). *See* 17 U.S.C. § 410(c).

tiffs' application for a preliminary injunction must therefore be denied. *Cf. American Air Parcel Forwarding Co. v. United States,* 6 C.I.T. 146, 573 F.Supp. 117 (1983).

## II

Reaching the foregoing conclusion, however, does not lead the court to adopt the ultimate conclusion proposed by the defendants, to wit, dismissal of this action on the ground that the claims raised herein are exclusively the province of the Minnesota district court pursuant to 28 U.S.C. § 1338(a).

As shown above, page 1336, the district judge does not share this viewpoint, nor does the Federal Circuit agree in its analysis and comparison of sections 1338(a) and 1581 of Title 28 in *Vivitar.*[8] Moreover, a recent comment on this point states that:

> ... [T]he mere fact that the case involves trademarks or copyrights does not mean that the Court [of International Trade] does not possess jurisdiction to review actions of the Customs Service which relate to trademarks or copyrights.[9]

■ Defendants' further position that there has been no "exclusion" of merchandise herein and thus no protestable act on the part of Customs is also not conclusive. While the copyright law, 17 U.S.C. § 603(c), is the statutory underpinning of the regulations (and actions) of the Customs Service, that section itself is tied directly to the manner of enforcement of the "customs revenue laws", a term also found in section 514 of the Tariff Act of 1922. In *McKesson & Robbins (Inc.) v. United States,* 43 Treas.Dec. 214, T.D. 39511 (1923), the Board of General Appraisers held that the "exclusion" protest provision contained in that section 514 enabled an importer to obtain review of a collector's refusal to withdraw an opium shipment that was un-

der warehouse entry in New York for transportation to New Orleans. The latter port was not designated for the importation of opium by the Federal Narcotics Control Board, which was composed of the Secretaries of State, Treasury and Commerce and empowered by the "Narcotic drugs import and export act" of 1922 to promulgate regulations restricting opium importation. Likewise, in *Wm. A. Brown & Co. v. United States,* 47 Treas.Dec. 862, T.D. 41001 (1925), the Board of General Appraisers denied a government motion to dismiss for lack of jurisdiction over a protest to a collector's decision to exclude opium-smoking pipe bowls since they were "articles of an immoral nature" prohibited from being imported.

In other words, the court's predecessor agency had jurisdiction to review protests precipitated in one instance by a controlled-substance law and in the other by a public morals law.

As indicated above, JRL interposed its protest pursuant to section 514 of the Tariff Act of 1930, specifically 19 U.S.C. § 1514(a)(4), which deleted the word "revenue" from the earlier section's usage of "customs laws". In *Norwood Imports v. United States,* 48 Cust.Ct. 1, C.D. 2306 (1961), the plaintiff invoked the court's jurisdiction as a result of a protest pursuant to that section 514 to claim that Customs had erroneously excluded artificial geraniums from entry into the country on the ground that they were piratical copies. It is unclear from the report of the decision whether jurisdiction was contested by the government, but, in any event, the court reached the merits in deciding the case.

The plaintiff in *Schaper Manufacturing Co. v. Regan,* 5 C.I.T. 266, 566 F.Supp. 894 (1983), was a copyright owner. A controversy arose with Customs over release of

---

8. *See generally* 761 F.2d at 1557–60. *Compare Coalition to Preserve the Integrity of American Trademarks v. United States,* 598 F.Supp. 844 (D.D.C.1984), *rev'd,* 790 F.2d 903 (D.C.Cir.1986), *with Olympus Corporation v. United States,* 627 F.Supp. 911 (E.D.N.Y.1985), *aff'd,* 792 F.2d 315 (2d Cir.1986).

9. Cohen, *Recent Decisions of the Court of International Trade Relating to Jurisdiction and Procedure: The Past Eighteen Months in Review,* U.S. Court of Int'l Trade Second Annual Judicial Conference, p. 140 (Oct. 23, 1985).

bonds posted by the owner in conformity with 19 C.F.R. § 133.43(b)(2). In that case, as here, the defendants moved to dismiss on the ground of lack of jurisdiction, which motion was denied for the following reasons, among others:

> ... [T]he subject matter of an action relating to the *existence* of a copyright alone does not suffice to grant exclusive jurisdiction to the United States District Court.... 5 CIT at 271, 566 F.Supp. at 898 (emphasis in original).

> \*     \*     \*     \*     \*     \*

> ... The jurisdiction of this court is not so evanescent as to preclude the plaintiff from seeking review with respect to the administration by customs of its regulations relating to the subject merchandise merely because some of the merchandise has been found by customs to be piratical in character. Whether the plaintiff may or may not intend to institute an action against the importer for "infringement" pursuant to the provisions of the copyright laws of the United States is not a matter that concerns this court. Until a claim for such "infringement" is made with an accompanying prayer for the relief provided by the copyright laws of the United States, no cause of action has been instituted within the exclusive jurisdiction of the United States District Court.[10]

The court in *Schaper* found two cases apparently relied on by the government, namely, *Bally/Midway Mfg. Co. v. Regan*, 5 C.I.T. 237, 565 F.Supp. 1045 (1983), and *Kidco, Inc. v. United States*, 4 C.I.T. 103 (1982), to be distinguishable. These cases are referred to again by the defendants herein, but this court concurs with the *Schaper* analysis. That is, in neither did the cause of action or claim for relief relate to the administration and enforcement of the Customs regulations governing the importation and/or exclusion of the particular merchandise in question. Rather, the relief sought appeared to be within district-court jurisdiction, and both actions were transferred accordingly.

The defendants also contend that the plaintiffs have failed to exhaust their administrative remedies in that the Commissioner of Customs has yet to decide whether to release the detained goods. However, the government admits that the Commissioner has an unlimited amount of time to reach a decision. *See* Tr. at 15. But courts have not permitted federal agencies to detain property for unlimited periods of time. For example, in *Gonzales v. Rivkind*, 629 F.Supp. 236 (M.D.Fla.1986), the court held that the Immigration and Naturalization Service's conveyance detention procedures in enforcing 8 U.S.C. § 1324 which subject seized vehicles to "standard customs forfeiture provisions"[11] do "not comport with the minimum constitutional requirements of due process". 629 F.Supp. at 238. The court refused to condone

> a situation in which the government takes a man's automobile, tells him to go home and then holds the car while administrative persons review the seizure to decide whether to press charges or proceed to forfeiture. The decision making process alone may take weeks or longer under the present program. 629 F.Supp. at 239.

There was no procedure "to assure that a prompt probable cause determination before a neutral judicial officer is available to the owner of a seized vehicle." *Id.*

In *Azurin v. Von Raab*, Civil No. 86–0189 (D.Hawaii June 6, 1986), the court required Customs to release detained property of former Philippines president Ferdinand Marcos. There the Service had argued that the plaintiffs lacked a remedy

---

**10.** 5 C.I.T. at 271–72, 566 F.Supp. at 899. This conclusion is preceded by a representation that the government considered exclusion of merchandise on the ground of piracy to be protestable pursuant to 19 U.S.C. § 1514. The court denied a subsequent motion for reconsideration of this point in 6 C.I.T. 24 (1983), characterizing the motion as a "changed position" on the part of the defendants which did not warrant reversal of the decision in view of the gravamen of the case.

**11.** 629 F.Supp. at 237.

since detentions are not protestable, but the court recognized that by not making "any final protestable decision, defendant can indefinitely detain the merchandise and evade any challenge by plaintiffs through administrative procedures." Slip op. at 24.

In *Azurin,* the district court exercised jurisdiction pursuant to 28 U.S.C. § 1361 as a result of the plaintiffs' failure to allege "any duty arising out of a customs law or regulation by which the defendant is compelled to release the merchandise" [*id.* at 7] and the judge's conclusion that "this action for mandamus cannot arise from a Customs law or regulation." [12]

The same cannot be said for the action at bar. However narrow the definition of "exclusion of merchandise ... under any provision of the customs laws" within the meaning of 19 U.S.C. § 1514(a)(4), such definition still encompasses the acts of Customs complained of herein. Furthermore, if exclusive jurisdiction is anything more than an element of defendants' advocacy, the district court which will decide the competing copyright claims considers such jurisdiction to rest with this court insofar as plaintiffs' grievances with the Service are concerned.

To reiterate, in view of the foregoing, plaintiffs' application for a preliminary injunction and defendants' motion to dismiss the complaint on the ground of lack of subject-matter jurisdiction must both be denied.

So ordered.

---

**12.** Slip op. at 8. The district court rendered its decision notwithstanding this Court of International Trade's subject-matter jurisdiction pursuant to 28 U.S.C. § 1581(i) to grant the same mandamus relief as to the Marcos property. *See Azurin v. United States,* 10 C.I.T. ——, 632 F.Supp. 30, 31 (1986).