**SCHAPER MANUFACTURING CO., DIVISION OF KUSAN, INC., Plaintiff,**

v.

**The Honorable Donald T. REGAN, Secretary of the Treasury of the United States, and the Honorable William Von Raab, Commissioner of Customs, Defendants,**

**and**

**The Milton D. Myer Company, Intervenor.**

**Court No. 83–3–00333.**

United States Court of International Trade.

June 16, 1983.

Plaia, Schaumberg & deKieffer, Tom M. Schaumberg and Alice A. Kipel, Washington, D.C., Romney, Golant, Martin, Disner & Ashen, Joseph Golant, Robert M. Ashen, Thomas D. Phillips, Los Angeles, Cal., for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, International Trade Field Office, Commercial Litigation Branch, New York City, Deborah E. Rand, Locust Valley, N.Y., for defendants.

Buell, Blenko, Ziesenheim & Beck, Lynn J. Alstadt, Pittsburgh, Pa., for intervenor.

*Memorandum Opinion And Order Denying Defendants' Motion To Dismiss For Lack Of Jurisdiction*

BOE, Judge:

In the instant proceedings the defendants seek to dismiss the above-entitled action for lack of jurisdiction of the subject matter.

The facts set forth by the court in a prior order granting the plaintiff a preliminary injunction have been reincorporated in part herein in connection with the court's consideration of the defendants' motion to dismiss.

The plaintiff is the owner of registered copyrights in certain toy vehicles, which said copyrights pursuant to customs regulations were recorded with the customs service.

Subsequent to the recording of the copyrights in question, the plaintiff was informed by the customs service that 125 cases of imported merchandise were being held by the Port Director of Customs, Pittsburgh, Pennsylvania, which were suspected to be piratical of plaintiff's copyrighted toy vehicles. Pursuant to customs regulations plaintiff demanded the imported toy vehicles be excluded from entry into the United States and posted a bond required by the customs service in the amount of $20,448.00.

Subsequently, on November 5, 1982, plaintiff was further informed that the Port Director of Customs in Pittsburgh, Pennsylvania, was holding two additional shipments of imported merchandise which, in turn, were suspected of being piratical copies of plaintiff's copyrighted toy vehicles.

With respect to the latter shipments designated as customs entry 83–800602–7 and customs entry 83–800586–6, the plaintiff again demanded their exclusion from entry into the United States and posted bonds in the respective sums of $83,794 and $14,778 as determined and required by the customs service.

Some of the articles contained in the respective imported shipments were piratical copies of the plaintiff's toy vehicles and other articles therein were non-piratical copies. In response to the request of plaintiff that separate bonds be filed with the customs service for each model of a toy vehicle imported on a model by model basis, the customs service at Pittsburgh, Pennsylvania, advised the plaintiff that only one bond per shipment is permitted. Plaintiff requested in writing the withdrawal of two bonds previously filed by it with the customs service in the amount of $83,794 and $14,778, respectively. On December 29, 1982, as required by 19 C.F.R. § 133.-43(c)(4), plaintiff filed in writing a statement agreeing to hold the customs service harmless for any consequence of returning the bonds and the release of the detained articles.

Despite the provision contained in 19 C.F.R. § 133.43(c)(4) that the District Director "shall require" both the copyright owner and the importer to sign such a hold harmless agreement, the importer, Milton D. Myer Co., refused to file the required statement.

In a communication by customs under date of February 22, 1983 together with a ruling issued on said date, plaintiff was advised:

1. That the single bond required of the plaintiff to be posted for each shipment would not be separated on a model by model basis thereby delineating between piratical or non-piratical copies.

2. That the imported model, "Super Climber" pick-up truck infringed the Scottsdale Copyright Number VA 101–550 owned by the plaintiff and, accordingly, was denied entry. The request of the importer to re-export said vehicles was granted.

3. That the imported model "Super Climber" jeep did not infringe on plaintiff's Renegade Copyright Number VA 101–548 and, accordingly, said detained imported vehicles were to be transmitted to the importer.

4. That the bonds posted by the plaintiff, the copyright owner, should be released and transmitted in full to the importer.

In a communication with an officer of the port district at Pittsburgh, Pennsylvania, plaintiff's counsel was informed that the customs service would transmit to the importer the three bonds hereinbefore referred to and posted by the plaintiff at such time as notice of re-export of the vehicles determined to have infringed on the copyright of the plaintiff had been received by the customs service.

A temporary restraining order with respect to the bonds in question was made and entered by this court under date of March 4, 1983, and a preliminary injunction enjoining customs and the Secretary of the Treasury from releasing these bonds was subsequently entered. —— CIT ——, Slip Op. 83–17 (March 21, 1983).

Subsequent to the entering of the preliminary injunction, customs ruled that approximately half of the subject imports violated plaintiff's copyright and half did not. Pursuant to an order of this court under date of May 24, 1983, and by agreement of the parties, including the Milton D. Myer Company, importer of the goods in question, liquidation of the non-infringing articles was stayed pending a determination by this court on defendants' motion to dismiss this case based on this court's alleged lack of jurisdiction. The articles found by customs to have violated plaintiff's copyright have been re-exported.

The defendants predicate their motion to dismiss upon two grounds:

(1) That the Customs Court Act of 1980 and particularly 28 U.S.C. § 1581(i) does not grant this court jurisdiction as contended by the plaintiff, and

(2) That the instant action arises out of the copyright laws of the United States, 17 U.S.C. § 602 et seq., and, accordingly, is solely within the jurisdiction of the United States District Courts pursuant to 28 U.S.C. § 1338.

In determining whether a cause of action might be embraced by the jurisdictional grant bestowed upon this court by the Congress, it is necessary that the gravamen of the complaint be determined. Although the complaint in the instant action alleges jurisdictional support under 28 U.S.C. § 1581(i) and 17 U.S.C. §§ 602, 603, from the allegations contained in the complaint as well as from all proceedings had before this court, it is manifest that the thrust of the grievance alleged and the relief sought by the plaintiff relates to the regulations promulgated by customs and their administration and enforcement by that agency.

The customs regulations under which plaintiff's principal claim for relief is sought provide in pertinent part:

§ 133.43 Procedure on suspicion of piratical copying.

(b) *Notice to copyright owner.* If the importer of suspected piratical copies

files a denial as provided in paragraph (a) of this section, the district director shall furnish the copyright owner a representative sample of the imported articles, together with notice that the imported articles will be released to the importer unless within 30 days from the date of the notice the copyright owner files with the district director:

(1) A written demand for the exclusion from entry of the detained imported articles; and

(2) A bond in the form and amount specified by the district director, conditioned to hold the importer or owner of such imported articles harmless from any loss or damage resulting from Customs detention in the event the Commissioner of Customs or his designee determines that the article is not a piratical copy prohibited importation under section 106 of the Copyright Act (17 U.S.C. 106).

\* \* \* \* \* \*

(c)(4) *Withdrawal of bond.* At any time prior to transmittal of the case to the Commissioner of Customs or his designee for decision, the copyright owner may withdraw a bond filed in accordance with paragraph (b) of this section. Prior to returning the bond to the copyright owner and release of the detained articles, the district director shall require the copyright owner and the importer to file written statements agreeing to hold the United States Customs Service and the district director harmless for any consequence or return of the bond and release of the detained articles. After the withdrawal of a bond, the district director shall release importations of the same article by the same importer without further notice to the copyright owner.

The foregoing regulations derive their authority from the delegation granted by the Congress in 19 U.S.C. §§ 66 and 1624. The provisions thereof are, in part, of particular pertinence:

1. Section 624 of the Tariff Act of 1930. 17 U.S.C. § 603, enacted in 1976, also authorizes the Secretary of the Treasury and U.S. postal

§ 66. Rules and forms prescribed by Secretary

The Secretary of the Treasury shall prescribe forms of entries, oaths, bonds, and other papers, and rules and regulations not inconsistent with law, to be used in carrying out the provisions of law relating to raising revenue from imports, or to duties on imports, or to warehousing, and shall give such directions to customs officers and prescribe such rules and forms to be observed by them as may be necessary for the proper execution of the law.

§ 1624. General regulations

In addition to the specific powers conferred by this chapter the Secretary of the Treasury is authorized to make such rules and regulations as may be necessary to carry out the provisions of this chapter.[1]

It is well established that a regulation adopted by a government agency under authority of an act of Congress has the force and effect of a Federal law when it is asserted as a basis of Federal jurisdiction. *Murphy v. Colonial Federal Savings and Loan Association,* 388 F.2d 609 (2nd Cir. 1967); *Farmer v. Philadelphia Electric Company,* 329 F.2d 3 (3rd Cir.1964).

The purpose of a congressional grant of authority to the Secretary of the Treasury in 19 U.S.C. §§ 66 and 1624 clearly is to provide for the establishment of such procedures and requirements relating to the importation of merchandise as might be dictated by the character of an article as well as by any laws of the United States which might directly or indirectly pertain to the importation of such merchandise. Although a regulation may not be specifically designed to collect revenue in the form of a duty upon importation, its purpose, nonetheless, may cause it to be a concomitant part of the function of raising "revenue from imports."

Viewing the entire context of Customs Regulation 19 C.F.R. § 133.43, this

service to separately or jointly make regulations for the enforcement of the provisions of title (17).

court can discern no purpose in its promulgation other than to serve as a corollary to the acknowledged primary functions of the agency in determining whether merchandise seeking importation should be excluded as well as in determining the proper amount of duty to be assessed upon merchandise granted the right of importation. Clearly, the provisions of 19 C.F.R. § 133.43 are an integral part of the "administration and enforcement" of laws and regulations required in connection with the raising of "revenue from imports" and are embraced within the jurisdictional grant to this court under 28 U.S.C. § 1581(i)(4).

The administration and enforcement of its regulations by customs has consistently been held to be a basis for this court's jurisdiction. *American Air Parcel Forwarding Co. v. United States,* 1 CIT 293, 515 F.Supp. 47 (1981). The legislative history of the Customs Court Act of 1980 clearly indicates that this court was designed to have jurisdiction over all "civil actions arising out of import transactions and the Federal statutes affecting international trade." 126 Cong.Rec. H9340 (Sept. 22, 1980). Early drafts of the Act specifically provide for such exclusive jurisdiction in this court. As the legislative history further relates, a modification thereof was made so as to give the federal district courts jurisdiction over cases involving imports which allegedly violate the food and drug laws of the United States. H.R.Rep. No. 96–1235, 96th Cong., 2nd Sess. 47 (1980), U.S.Code Cong. & Admin.News 1980, p. 3729.

The defendants in support of their motion to dismiss further contend that the subject matter of plaintiff's complaint arises under the copyright laws of the United States. Citing 28 U.S.C. § 1338 the defendants urge that exclusive jurisdiction, accordingly, lies in the United States District Court. Section 1338 provides:

(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

The importation into the United States of copies of copyrighted articles, without the authority of the copyright owner, constitutes an infringement. 17 U.S.C. § 602. The importation and the resulting infringement gives rise to a cause of action against the importer for such remedies as are provided by the act. 17 U.S.C. § 501 et seq.[2] It is well established, however, that the subject matter of an action relating to the *existence* of a copyright alone does not suffice to grant exclusive jurisdiction to the United States District Court under Title 5, 17 U.S.C. All actions for "infringement" of particular rights possessed by a copyright owner arise under the copyright laws of the United States, thereby conferring original jurisdiction in the federal district court. 17 U.S.C. § 501. *Luckett v. Delpark,* 270 U.S. 496, 46 S.Ct. 397, 70 L.Ed. 703 (1926); *Laning v. National Ribbon and Carbon Paper Mfg. Co.,* 125 F.2d 565 (7th Cir.1942); *United States Fire Protection Co. et al. v. Monocel Inc., et al.,* 53 F.Supp. 989 (D.N.J.1943).[3]

In the instant action the plaintiff has neither joined the importer as a party defendant nor has it asserted any claim whatsoever against the importer by way of copyright infringement. Although a paragraph in plaintiff's prayer for relief seeks a reversal of the decision of customs with respect to the merchandise found to be non-piratical, the thrust of the instant action and the relief sought is (1) the return of the bonds to the plaintiff pursuant to its request for withdrawal and (2) the filing of individual bonds by the plaintiff on a model by model basis instead of one bond for each entry as

---

**2.** Section 502—injunctions; section 503—impounding and disposition of infringing articles; section 504—damages, actual and statutory.

**3.** Although the decisions cited relate to the exclusive jurisdiction of the federal district courts

in actions arising out of the patent laws of the United States, the reasoning in each decision is equally applicable to the copyright laws of the United States and the actions arising thereunder.

directed by customs. Were it to be ultimately determined that the bonds in question are entitled to be withdrawn by virtue of plaintiff's request, it would appear to this court that no cause of action, in fact, would remain. The cause of action set forth in plaintiff's complaint is directed against the defendant, the United States, and relates principally to the admission of the subject merchandise and the correctness of the administration of the customs regulations affecting the imported merchandise in question. No claim is made nor sought in the instant action against the United States for infringement.

The exclusivity of the federal district court's jurisdiction attributed by the defendants to the instant action by virtue of its construction of the United States copyright laws, indeed, is diluted, if not lost, in view of the defendants' acknowledgment that the right of protest and subsequent judicial review by this court under 19 U.S.C. § 1514 is available to the importer challenging the determination of customs to exclude merchandise because of its piratical character. *See Norwood Imports v. United States,* 48 Cust.Ct. 1 (1961). The jurisdiction of this court is not so evanescent as to preclude the plaintiff from seeking review with respect to the administration by customs of its regulations relating to the subject merchandise merely because some of the merchandise has been found by customs to be piratical in character. Whether the plaintiff may or may not intend to institute an action against the importer for "infringement" pursuant to the provisions of the copyright laws of the United States is not a matter that concerns this court. Until a claim for such "infringement" is made with an accompanying prayer for the relief provided by the copyright laws of the United States, no cause of action has been instituted within the exclusive jurisdiction of the United States District Court.

The decisions in the cases of *Bally/Midway Mfg. Co. v. Regan,* —— CIT ——, 565 F.Supp. 1045, Slip Op. 83–51 (May 27, 1983) and *Kidco, Inc. v. United States,* 4 CIT ——, Slip Op. 82–71 (Sept. 8, 1982) are distinguishable from the instant action. In neither of the foregoing cases did the cause of action or the claim for relief relate to the administration and enforcement of the customs regulations ancillary to the importation and/or exclusion of the particular merchandise there in question. It is noteworthy that in *Kidco* an action previously had been instituted by the plaintiff in the federal district court for infringement.

Accordingly, it is hereby ORDERED that the motion of the defendants' to dismiss the above-entitled action for lack of jurisdiction be and is hereby denied.