Slip Op. 06-77

## UNITED STATES COURT OF INTERNATIONAL TRADE

H & H WHOLESALE SERVICES, INC.,

        Plaintiff,

        v.

UNITED STATES,

        Defendant.

Before: Restani, Chief Judge

Court No. 05-00636

## OPINION

[Action challenging seizure of merchandise dismissed for lack of subject matter jurisdiction.]

Dated: May 23, 2006

Edmund Maciorowski for the plaintiff.

Peter D. Keisler, Assistant Attorney General, Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Amy M. Rubin), Chi S. Choy, Office of the Assistant Chief Counsel, Bureau of Customs and Border Protection, Department of Homeland Security, of counsel, for the defendant.

Restani, Chief Judge: This matter is before the court on defendant's Motion to Dismiss a complaint filed by plaintiff, H & H Wholesale Services, Inc. ("H & H"), alleging that the Bureau of Customs and Border Protection ("Customs") acted arbitrarily and capriciously in "excluding" a shipment of "One Touch" blood glucose test strips (the "merchandise") imported on June 25, 2005. Defendant United States (the "Government") argues that the court lacks jurisdiction under 28 U.S.C. 1581(a) and (i) (2000) to hear the matter because the products were seized, not

excluded.  H & H has two responses.  First, it claims that sufficient indicia of exclusion exist to support the court's jurisdiction.  Second, even if the facts alleged do not support jurisdiction, H & H submits that discovery is warranted prior to ruling on the Government's Motion to Dismiss.

Additionally, H & H has filed an Amended Complaint, along with a Motion to Compel Defendants to Answer Plaintiff's Amended Complaint and Limit Time to Answer ("Motion to Compel").  The Amended Complaint follows the original Complaint, save for an additional count (Count Seven), alleging that Customs behaved arbitrarily and capriciously in demanding redelivery of a separate shipment of One-Touch blood glucose test strips that arrived in the United States from Canada on March 8, 2006.  (Am. Compl. ¶¶ 68–69.)  The Government has moved to strike, or, in the alternative, to dismiss Count Seven of the Amended Complaint.

## BACKGROUND

In June 2005, H & H imported a split-shipment of "One Touch" blood glucose test strips, produced by Lifescan, a subsidiary of Johnson & Johnson, Inc.  (Compl. ¶ 5, Ex. 1.)  The shipment arrived in Detroit on June 25, 2005.  (Compl. ¶ 12, Ex. 7.)  After taking a sample on June 27, Customs placed the shipment on "hold for intensive examination" on June 28.  (Compl. ¶¶ 15–16.)  On July 7, 2005, having received no notice of detention, counsel for H & H sent a letter to Customs to inquire about the status of its shipment.  (Compl. ¶ 17, Pl.'s Resp. Def.'s Mot. Dismiss Ex. C.)  On July 8, counsel for H & H received a letter via facsimile from Customs stating that any inquiries regarding the merchandise should be directed to the Office of Immigration and Customs Enforcement.  (Pl.'s Resp. Def.'s Mot. Dismiss 5, Ex. C.)  On July 14, Customs officers seized the merchandise and issued a custody receipt for the seized property.

(Compl. ¶ 18, Ex. 15.)  On July 21, Customs issued notices of seizure to H & H, which stated that the merchandise had been seized pursuant to 19 U.S.C. § 1595a(c) (2000 & West Supp. 2005) for attempted introduction of misbranded drugs into interstate commerce in violation of 21 U.S.C. §§ 331 and 352 (2000 & West Supp. 2005).  (Compl. Exs. 16–17.)  The notice included a "Notice of Seizure and Information for Claimants Form," advising H & H of its right to file a claim after forfeiture proceedings were instituted or to seek administrative relief from forfeiture. (Compl. Exs. 16–17.)  On August 8, 2005, H & H filed a protest "against [Customs's] classification decision; [its] appraisement decision, [its] decision to exclude the merchandise from entry or delivery and, any assessment, whether or not charged, on certain glucose test strips."  (Compl. Ex. 18.)  Customs's hand-written response on the protest form was initially marked "denied in full for the reason checked," but was changed to reflect that the protest was "rejected as non-protestable."  (Compl. Ex. 18.)  By way of explanation, Customs wrote: "Both entries have been seized.  (FP&F Case – 2005-3807-000250 and 2005-3807-000252)  Please address any outstanding issues in the FP&F petitioning process."[1]  (Compl. Ex. 18.)

On August 23, 2005, Customs sent H & H an amended notice of seizure, stating that it had decided "not to pursue" forfeiture under 21 U.S.C. §§ 331 and 352, but would seek forfeiture of the merchandise under 19 U.S.C. § 1526(e) for violations of Johnson & Johnson's trademark on One Touch blood glucose test strips.  (Compl. Ex. 22–23.)  On November 18, 2005, H & H filed a summons and complaint in this court under 28 U.S.C. § 1581(a) and (i), challenging Customs's denial of its protest of the "exclusion" of its merchandise.

---

[1]  "FP & F" stands for "Fines, Penalties and Forfeitures."

While this Motion to Dismiss was pending, H & H filed an Amended Complaint challenging Customs's actions regarding a separate shipment of One-Touch blood glucose test strips from Canada.  This shipment arrived in the Port of Detroit on March 8, 2006, and was presented for entry on March 10.  (Am. Compl. ¶ 69–70.)  Customs released the shipment on March 28, 2006, following a "hold for intensive examination."  (Am. Compl. ¶¶ 72–73.)  Customs then issued a demand for redelivery of the shipment the following day.  (Am. Compl. ¶ 74.)  H & H filed a protest to the demand for redelivery on March 30.  (Am. Compl. Exs. 31–32.)  Count Seven of the Amended Complaint alleges that Customs improperly demanded redelivery.  (Am. Compl. ¶ 79.)   At the time the Amended Complaint was filed, Customs had not yet denied the protest.  Customs did not respond to the protest and it was deemed denied on April 30, 2006.  (See Pl.'s Resp. Def.'s Mot. Strike 6.)

## DISCUSSION

### I.    H & H's Amended Complaint

Count Seven of H & H's Amended Complaint challenges the denial of its protest of Customs's demand for redelivery of the March 8, 2006 shipment.  (Am. Compl. ¶¶ 74, 78.)  The Government objects that the entry and protest listed in Count Seven do not appear in the summons filed to initiate this action, and has moved to strike, or in the alternative, dismiss for lack of jurisdiction, Count Seven of the Amended Complaint.  Rather than issue a separate opinion, the court will address the merits of the Government's Motion to Strike here.

The initial pleading in an action under 28 U.S.C. § 1581(a) is a summons.  USCIT R. 3(a)(1); DaimlerChrysler Corp. v. United States, 442 F.3d 1313, 1318  (Fed. Cir. 2006) ("We conclude that the initial pleading in actions to contest the denial of a protest is the summons.").

The summons must establish the court's jurisdiction, and "[b]ecause each protest forms the basis for a separate cause of action, the summons must establish the Court of International Trade's jurisdiction as to each protest." Id. at 1319.  H & H's summons makes no mention of entry number DQ4-1936394-9 or protest number 3801-06-100161, and H & H acknowledges that it has not filed an amendment to the summons to reflect the new shipment.  (Pl.'s Resp. Def.'s Mot. Strike 5 n.2.)  Because H & H failed to amend the summons, the court lacks jurisdiction to consider Count Seven of H & H's Amended Complaint.  Count Seven of the Amended Complaint is therefore dismissed without prejudice.  Consequently, H & H's Motion to Compel an answer to the Amended Complaint is denied.

## II.    The Court Lacks Subject Matter Jurisdiction Under § 1581(a)

The court now turns to the counts alleged in the original complaint.  As the party seeking to invoke the jurisdiction of this court, H & H bears the burden of establishing jurisdiction. Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993).  In ruling on a Rule 12(b)(1) motion, the court must first determine whether the Motion to Dismiss challenges the sufficiency of the pleadings or controverts the factual allegations made in the pleadings.  Power-One Inc. v. United States, 23 CIT 959, 962 n.9, 83 F. Supp. 2d 1300, 1303 n.9 (1999).  If the motion challenges the sufficiency of the pleadings, the court will assume the bare allegations of the complaint are true.  Id.  If, however, the motion controverts factual allegations supporting the Complaint, "the allegations in the complaint are not controlling," and "are subject to fact-finding by the district court." Cedars-Sinai, 11 F.3d at 1583–84.

This case involves a challenge to one factual allegation underlying the pleadings.  H & H contends that the merchandise was excluded prior to being seized; the Government argues that

no exclusion took place.  The court will therefore "review evidence outside the pleadings to determine facts necessary to rule on the jurisdictional issue."  Autoalliance Int'l, Inc. v. United States, 398 F. Supp. 2d 1326, 1332 (CIT 2005).

**A.      No Exclusion of the Merchandise Occurred Prior to Seizure on July 28, 2005**

H & H asserts that the court has subject matter jurisdiction under 28 U.S.C. § 1581(a), or alternatively under 28 U.S.C. § 1581(i).  The court has "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930 [codified at 19 U.S.C. § 1515]."  28 U.S.C. § 1581(a).  This includes a challenge to the denial of a protest concerning "the exclusion of merchandise from entry or delivery . . . under any provision of the customs laws, except a determination appealable under section 1337 of this title."[2]  19 U.S.C. § 1514(a)(4) (2000).

It is well established, however, that the court lacks jurisdiction under § 1581(a) to review a seizure of goods by Customs.  If Customs's treatment of the merchandise "was a 'seizure' . . . jurisdiction would lie with the United States District Court . . . under 28 U.S.C. § 1356."  Milin Indus., Inc. v. United States, 12 CIT 658, 659, 691 F. Supp. 1454, 1454 (1988).[3]  Exclusion

---

[2]  19 U.S.C. § 1337 (2000 & West Supp. 2005) concerns investigations by the International Trade Commission and is not relevant here.

[3] Pursuant to 28 U.S.C. § 1356 (2000), "[t]he district courts shall have original jurisdiction . . . of any seizure under any law of the United States on land or upon waters not within admiralty and maritime jurisdiction, except matters under the jurisdiction of the Court of International Trade under section 1582 of this title."  28 U.S.C. § 1582 (2000) relates to claims

(continued . . .)

differs from seizure in that "[t]he practical effect of the former . . . is to deny entry into the customs territory of the United States. The importer may then dispose of the goods as he chooses. In the case of seizure, however, the government often takes control of the merchandise, and may ultimately institute forfeiture proceedings." R.J.F. Fabrics, Inc. v. United States, 10 CIT 735, 738, 651 F. Supp. 1431, 1433 (1986). "[T]he filing of a protest subsequent to a seizure does not automatically mean the importer is protesting the seizure as opposed to the exclusion." Tempco Mktg. v. United States, 21 CIT 191, 193, 957 F. Supp. 1276, 1278 (1997). Nevertheless, an exclusion must take place before a plaintiff may protest it. If only a seizure took place, the court has no jurisdiction. Id. at 194, 957 F. Supp. at 1279.

In 1993, Congress passed the Customs Modernization Act (the "Mod Act") as Title VI of the North American Free Trade Agreement Implementation Act, which limited the time available to Customs to make a decision to detain, exclude or seize an entry. See North American Free Trade Agreement Implementation Act, Pub. L. No. 103-182, Title VI, § 613, 107 Stat. 2057, 2171 (1993) (amending 19 U.S.C. § 1499 (2000)). After presentation of goods for entry, Customs has five days, excluding weekends and holidays, in which to either release or detain those goods.[4] 19 U.S.C. § 1499(c)(1). If the goods are not released within those five days, they

_____

brought by the United States to recover civil penalties, bonds and duties, and is not relevant here.

[4] Detention provides Customs with time to determine whether to exclude or seize goods, but does not result in an exclusion or seizure itself. See North American Free Trade Agreement Implementation Act, H.R. Rep. No. 103-361, pt. 1, at 111–12 (1993), as reprinted in 1993 U.S.C.C.A.N. 2552, 2662–63 ("It is intended that the provisions set forth in subsection (c), relating to the detention of merchandise, provide a carefully balanced structure which allows the Customs Service, in the first instance, a minimum of 60 days in which to determine whether

(continued . . .)

are deemed detained.  Id.  Customs must "make a final determination with respect to the admissibility of detained merchandise" within thirty days after the merchandise is presented for examination.  § 1499(c)(5)(A).  Failure to make a final determination within thirty days is "treated as a decision . . . to exclude the merchandise for purposes of [19 U.S.C. § 1514(a)(4)]." § 1499(c)(5)(A).  This is referred to as a "deemed exclusion."

The merchandise in this case was seized within thirty days after it was presented to Customs for inspection.  (See Compl. ¶¶13, 18–19.)  Therefore, no "deemed exclusion" took place.  Absent a deemed exclusion, H & H must show that an express exclusion of the merchandise occurred.[5]  H & H contends that the merchandise was expressly excluded sometime in July 2005, before it was seized.  (See Pl.'s Br. Supp. Mot. for an Expedited Litig. Schedule 4.)

---

merchandise initially detained shall be excluded from entry or seized and forfeited if otherwise authorized under other provisions of law.").

[5]  The Government argues that if a final determination to seize is made within thirty days of presentation, the court may assume that no exclusion took place.  (Def.'s Reply Br. Supp. Mot. Dismiss 8 ("If . . . the detained merchandise is seized within . . . 30 days [following presentation of the merchandise for inspection] . . . no legal exclusion has occurred.") (emphasis removed)).  Tempco contains some language supporting the Government's interpretation.  See 21 CIT at 194, 957 F. Supp. at 1279 ("Since the seizure occurred within thirty days of the presentation for examination, the merchandise was never deemed excluded pursuant to 19 U.S.C. § 1499(c)(5)(A).  Accordingly, the protest can only be construed as a protest of the seizure.  Therefore, under the International Maven [v. McCauley, 12 CIT 55, 678 F. Supp. 300 (1988)] analysis, the Court does not have jurisdiction over this action . . . .").  The court notes, however, that Customs sometimes issues express exclusions of merchandise within thirty days after entry.  See, e.g., Item Co., v. United States, 19 CIT 1000, 1000 (1995) (textiles entered March 8, 1995, excluded March 9, 1995).  The court sees no reason to assume that the Mod Act amendments to § 1499 were intended to deprive Customs of the authority to issue an express exclusion of merchandise, which might be effective if a later seizure were found defective.  Nonetheless, resolution of this issue is ultimately unnecessary to the court's decision, as H & H has not provided sufficient evidence indicating that an express exclusion took place.

**1.     Under the Relevant Test, No Seizure Occurred**

In determining whether a plaintiff has challenged a seizure, as opposed to an exclusion,

the court commonly considers a number of factors, including whether:

> 1) the plaintiff's protest indicated that it was challenging the "seizure" of the merchandise; 2) the plaintiff received a notice of seizure from Customs; 3) the government had control over the merchandise; and 4) upon notice, the plaintiff was required to choose between immediate forfeiture proceedings or a petition for relief from seizure.

CDCOM (U.S.A.) Int'l, Inc. v. United States, 21 CIT 435, 438, 963 F. Supp. 1214, 1217 (1997);

see also Int'l Maven, 12 CIT at 58, 678 F. Supp. at 302 (concluding, after considering the above

factors, that "[t]here does not appear to have been any exclusion, but rather the goods were

seized"). With respect to the first factor, H & H notes that it filed a protest specifically

challenging Customs's alleged "exclusion" of the merchandise, not the seizure. (See Compl. Ex.

20.) This is undisputed, but this fact standing alone does not control the question of jurisdiction.

It is the "action taken by Customs," not the action taken by the plaintiff, that is the ultimate

object of this inquiry. See CDCOM, 21 CIT at 438, 963 F. Supp. at 1217 ("The jurisdiction of

the Court, therefore, depends on the nature of the action taken by Customs."). H & H cannot

transform the notices of seizure into exclusions simply by filing a protest. Furthermore,

Customs's response to H & H's protest helps demonstrate that no exclusion occurred – Customs

did not deny H & H's protest, but "rejected [it] as non-protestable" because "[b]oth entries h[ad]

been seized." (Compl. Ex. 18.)

H & H's exhibits show that it received notices of seizure from Customs prior to filing its

protest. (See Compl. Exs. 16–17.) Thus, H & H received notice of seizure for the purposes of

the second factor described in CDCOM and International Maven. Relatedly, the notices required

H & H to choose between immediate forfeiture proceedings or a petition for relief, as described

in factor four.  The notices clearly state "[e]nclosed is a NOTICE OF SEIZURE AND

INFORMATION FOR CLAIMANTS."  (Compl. Exs. 16–17.)  This notice "explains the options

available to you," and includes instruction to "mark the first block and sign the ELECTION

PROCEEDINGS form in order for this office to process your petition."  (Compl. Exs. 16–17.)

Finally, H & H has not shown that it regained control over the merchandise after it was

presented for examination.  As noted, one clear difference between exclusion and seizure is who

gains control of the merchandise by virtue of Customs's action.  R.J.F., 10 CIT at 738, 651 F.

Supp. at 1433.  When merchandise is excluded, the owner regains control of it and may ship it to

another destination.  Id.  When merchandise is seized, Customs retains control of it and it may

not be sent to another destination.  Id.  H & H's complaint admits that Customs "refus[ed] to

deliver the subject article to Plaintiff," and "has denied release of the subject merchandise."

(Compl. ¶¶ 29, 47.)  It appears that the merchandise remained in the control of Customs

throughout the period of "intensive examination," which is alleged to have lasted at least until

July 5, 2005.  (Pl.'s Resp. Def.'s Mot. Dismiss 4.)  Furthermore, on July 8, 2005, H & H

received a fax notifying it that the Office of Immigration and Customs Enforcement had assumed

responsibility for the matter, which indicates that the investigation leading to seizure had already

begun.  (Pl.'s Resp. Def.'s Mot. Dismiss Ex. C.)  H & H has not asserted any facts showing that

it regained control of the merchandise or had the option to ship it away from the United States.

A review of the evidence presented to the court by H & H thus precludes a finding that H & H

had control of the merchandise at any point after entry.  The court finds that the absence of such

control, combined with the notices of seizure and Customs's response to H & H's protest,

demonstrate that the merchandise was seized without a preceding exclusion.

### 2.      H & H's Additional Arguments Do Not Demonstrate that a Seizure Occurred

H & H alleges a number of facts that in its view demonstrate the existence of an exclusion under Milin.  Milin involved a protest to the exclusion of improperly-invoiced merchandise (rags) prior to their seizure.  The rags were entered on June 23, 1987.  Id. at 660, 691 F. Supp. at 1455.  On June 24, Customs ordered a "hold" on the rags.  Id.  The rags were then seized on June 29.  Id.  The court found the rags had been excluded upon entry on June 23, 1987.  Id. at 664, 691 F. Supp. at 1458.  This case similarly involves a "hold for intensive examination" and a delay between entry and seizure.  Therefore, H & H argues that it is "readily apparent that even under the law as it existed prior to passage of the Mod Act this court could easily identify a protestable exclusion."  (Pl.'s Resp. Def.'s Mot. Dismiss 16.)

The significance of a hold for examination and a delay between entry and seizure has diminished in the years since Milin was decided.  Under the law at the time, the Milin court found an exclusion based on a six-day delay between entry and seizure.  Milin, 12 CIT at 663, 691 F. Supp. at 1457.  Milin dealt with the law before passage of the section 613(c) of the Mod Act, which amended 19 U.S.C. § 1499(c).  Prior to those amendments, there was no statutory procedure for detaining merchandise, nor was there a provision for deemed exclusion after thirty days.  See Detention of Merchandise, 64 Fed. Reg. 43,608, 43,609 (Dep't Treasury Aug. 11, 1999) (final rule) ("Prior to [the Mod Act], Customs, while having extensive examination and broad detention authority, had no specific statutory or regulatory procedures for detaining merchandise whose admissibility had not yet been determined.").  The Mod Act amendments to

§ 1499 now provide a period of detention, prior to a decision to release or seize the merchandise, of at least thirty days before exclusion is assumed, and an additional thirty days before suit may be filed. See 19 U.S.C. §§ 1499(c)(5)(A) (deemed exclusion thirty days following presentation of merchandise for examination); 1499(c)(5)(B) (protest deemed denied thirty days after submission to Customs); North American Free Trade Agreement Implementation Act, H.R. Rep. No. 103-361 at 111–12, as reprinted in 1993 U.S.C.C.A.N. at 2662–63 ("It is intended that the provisions set forth in subsection (c), relating to the detention of merchandise, provide a carefully balanced structure which allows the Customs Service, in the first instance, a minimum of 60 days in which to determine whether merchandise initially detained shall be excluded from entry or seized and forfeited if otherwise authorized under other provisions of law."). Given these amendments, the Mod Act has clarified that the detention and examination of goods does not automatically result in an exclusion. See id. The court cannot assume that failure to seize the merchandise immediately upon entry gave rise to a protestable exclusion, as the court did in Milin. See id.; see also CDCOM, 21 CIT at 436–39, 963 F. Supp. at 1215–17 (finding no exclusion where goods presented for entry, detained for examination on June 27, 1996, then seized as bearing a counterfeit trademark on July 26, 1996); Tempco, 21 CIT at 192–94, 957 F. Supp. at 1277–79 (finding no exclusion where goods were entered on September 13, 1996, detained September 18, and then seized on October 11, 1996). Milin does not control.

H & H next makes two arguments that Customs's regulations at least anticipate that an exclusion could have occurred in this case. Of course, even if H & H is correct that Customs could have excluded the merchandise, the existence of legal authority to exclude does not prove that a protestable exclusion actually took place. Nonetheless, for completeness sake the court

will address these arguments.  First, H & H claims that, prior to seizing the merchandise,

Customs's regulations at 19 C.F.R. §§ 133.23(b) and 133.25(c) (2006) require "not only an

'admissibility' decision but also a 'denial of entry' . . . which is consistent with an exclusion

from entry or delivery as required under both 19 USC 1499 and 19 USC 1514."[6]  (Pl.'s Resp.

Def.'s Mot. Dismiss 17.)  These regulations have no bearing in this case, however, because

H & H's merchandise was seized under 19 C.F.R. § 133.21, which deals with counterfeit

merchandise.  (Compl. Ex. 22–23 ("The boxes are counterfeit of the One Touch trademark

owned by Johnson & Johnson . . . . Pursuant to title 19, Code of Federal Regulations, part

133.21(b), any article of domestic or foreign manufacture imported into the United States

bearing a counterfeit trademark shall be seized . . . .")).  Section 133.21(b) provides that

Customs shall seize "[a]ny article of foreign or domestic manufacture imported into the United

States bearing a counterfeit trademark," and makes no mention of a "denial of entry."  See 19

C.F.R. § 133.21.  Thus, the language of the applicable Customs regulation supports the

conclusion that the merchandise was seized and not excluded.

        H & H's next argument is based on the regulatory history of 19 C.F.R. § 133.25(c), later

codified at 19 C.F.R. § 133.52(c), which deals with the disposition of "articles bearing a

---

    [6]  19 C.F.R. § 133.22 is entitled "[r]estrictions on importation of articles bearing copying
or simulating trademarks," and provides that "[a]ny articles . . . imported into the United States
bearing a mark or name copying or simulating a recorded mark or name shall be denied entry
and subject to detention as provided in § 133.25."  19 C.F.R. § 133.22(b).  19 C.F.R. § 133.23 is
entitled "[r]estrictions on importation of gray market articles," and provides that "[a]ll restricted
gray market goods . . . shall be denied entry and subject to detention as provided in § 133.25."
19 C.F.R. § 133.23(c).  Section 133.25 provides for the detention of goods subject to section
133.22 and 133.23, and the denial of entry for such goods.  See 19 C.F.R. § 133.25(b)–(c).
Section 133.25 makes no mention of goods seized under section 133.21.  See id.

counterfeit trademark." (Pl.'s Resp. Def.'s Mot Dismiss 18.) In 1979, Commenters to the

proposed section 133.25(c) complained that no procedure existed for challenging a Customs

determination that a trademark was counterfeit. See T.D. 79-159, 13 Cust. B. & Dec. 370, 382

(1979).[7] Customs refused to add such a procedure, stating that it was "of the opinion that there

are already adequate procedures in the regulations to contest or appeal a decision." Id. H & H

notes that Customs stated that one way to contest a decision may be section 174.11(d), which

authorizes "the filing of a protest from the exclusion of merchandise from entry or delivery under

any provision of the Customs laws." Id. at 382–83. H & H asserts that "[t]his history provides

an unambiguous acknowledgment by customs that the procedure for contesting a determination

that goods bear a counterfeit trademark is the filing of a protest from exclusion." (Pl.'s Resp.

Def.'s Mot. Dismiss 19.) H & H ignores that Customs's response also states that "part 171 [of

19 C.F.R.] provides procedures for petitioning for relief from fines, penalties, and forfeitures."

Id. at 382. The reference to section 174.11(d) notwithstanding, the surrounding regulations

---

[7] The cited section of comments states in full:

Several commenters contended that proposed section 133.25 [later codified as 19 C.F.R. 133.52] was deficient in that it failed to provide the importer of goods bearing allegedly counterfeit trademarks a means of contesting a determination that the trademarks are counterfeit. The commenters believed that the section should be revised to provide for an appeal procedure.

Customs is of the opinion that there are already adequate procedures in the regulations to contest or appeal a decision. For example, part 171 provides procedures for petitioning for relief from fines, penalties, and forfeitures; section 174.11(d) authorizes the filing of a protest from the exclusion of merchandise from entry or delivery under any provision of the Customs laws; and section 177.11(b) sets forth a procedure for obtaining internal advice.

T.D. 79-159, 13 Cust. B. & Dec. at 382–83.

make clear that Customs does not expect exclusion to occur in all cases involving counterfeit

merchandise.  19 C.F.R. 133.21(e) provides that counterfeit merchandise "shall be disposed of in

accordance with § 133.52, subject to the importer's right to petition for relief from the forfeiture

under the provisions of part 171 of this chapter," but makes no reference to exclusions or

protests under section 174.11.  See 19 C.F.R. § 133.21.  The provisions of 19 C.F.R. part 171

also specifically discuss seizures and forfeiture, while section 174.11 makes no mention of

seizures.  Compare 19 C.F.R. §§ 171.0 (providing that part 171 applies to petitions for the

restoration of proceeds from the sale of seized and forfeited property), 171.14 (providing advice

relating to seizures and forfeitures), with 174.11 (listing protestable actions described in 19

U.S.C. § 1514(a) without mentioning seizures).  In the presence of the specific regulatory

provisions of part 171, the court finds that Customs's reference to section 174.11 in the cited

passage of regulatory history does not establish that seizures of counterfeit goods are necessarily

accompanied by protestable exclusions.[8]

---

[8] H & H's citation to Vivitar Corp. v. United States, 8 CIT 109, 593 F. Supp. 420 (1984), which discusses gray-market goods, is irrelevant here.  Here, the merchandise was seized for bearing a counterfeit trademark on its packaging, not as gray-market goods.  It should also be noted that Vivitar references the 1983 version of 19 C.F.R. § 133.21 as the provision calling for the exclusion of grey-market merchandise.  Id. at 110, 593 F. Supp. at 423.  Section 133.21 has since been modified, and no longer governs the treatment of gray-market goods.  Compare 19 C.F.R. § 133.21 (1983) with 19 C.F.R. § 133.21 (2006); see also Gray Market Imps. & Other Trademarked Goods, 64 Fed. Reg. 9058 (Dep't Treasury Feb. 24, 1999) (final rule) (reorganizing customs regulations with respect to counterfeit, simulating and gray-market goods).

**B.      Amendment of the Notice of Seizure More Than Thirty Days After Entry**

**Did Not Give Rise to an Exclusion Under 19 U.S.C. § 1499(c)**

H & H also contends that the merchandise should be deemed excluded because Customs amended its original notices of seizure, abandoning its claims for forfeiture under 21 U.S.C. §§ 331 and 352 (adulterated and misbranded goods) and substituting a claim for forfeiture under 19 U.S.C. § 1526(e) (counterfeit trademark). According to H & H, because "the August 23 notices were not amending notices at all, but rather were supplemental notices . . . . the original notices of seizure must be void from inception." (Pl.'s Resp. Def.'s Mot. Dismiss 21.) H & H cites Detroit Zoological Society v. United States, 10 CIT 654, 656, 647 F. Supp. 147, 149 (1986), for the proposition that "when new assertions are made in a document it is in essence a supplemented complaint, which is a new suit altogether," and therefore "the action does not commence until the day the new complaint is filed." (Pl.'s Resp. Def.'s Mot. Dismiss 21.)

Detroit Zoological neither stands for this proposition nor governs the outcome of this case. In Detroit Zoological, the court considered whether to allow a plaintiff to file a supplemental complaint under USCIT R. 15(d). Id. at 655, 647 F. Supp. at 148. The plaintiff had failed to allege sufficient facts to support jurisdiction in its original complaint, but subsequent events had given rise to facts that, if alleged, would have supported jurisdiction. Id. (finding that every protest denial supporting jurisdiction under 19 U.S.C. § 1581(a) occurred after suit had been filed). The plaintiff sought to file a supplemental complaint to allege the new jurisdictional facts. Id. The court recognized that it had authority to dismiss the case, but declined to do so. Id. at 656–57, 647 F. Supp. at 149. Instead, it accepted a supplemental complaint under Rule 15(d) in the interests of judicial efficiency, because the statute of

limitations was not involved and no party would be prejudiced.  Id. at 657, 647 F. Supp. at 149.
To avoid prejudicing the defendant, the court reserved the question of whether the supplemental
complaint would be allowed to "relate back" to the original complaint, thus allowing the plaintiff
to collect prejudgment interest from the time the new jurisdictional facts occurred, or to take
effect from the date it was filed.  See id. at 657, 647 F. Supp. at 150 ("[T]he First Amended and
Supplemented Complaint is accepted, and the action will be deemed to have been commenced by
a new summons filed on the date it is actually filed or on a date no earlier than July 22, 1986.")
(emphasis added).

        The court did not decide that all supplemental complaints, much less amended notices of
seizure, void prior complaints or notices ab initio.  In fact, the court left open the possibility that
the supplemental complaint might be deemed filed on the date the new jurisdictional facts
occurred, rather than the date on which the supplemental complaint was filed.  Id. at 657, 647 F.
Supp. at 150.  Assuming, arguendo, that the court's Rule 15(d) analysis may be analogized to
notices of seizure, Detroit Zoological leaves open the possibility that the amended notices would
be effective as of the date of the new facts they allege.  Id.  In this case, the "new fact" alleged in
the amended notices was the counterfeit packaging containing the merchandise.  (See Compl.
Exs. 22–23.)  The packages containing the merchandise were the same on the day Customs
amended the notices of seizure as they were on the day they arrived in the United States.  Thus,
the "new facts" alleged in the amended notices existed before the thirty days elapsed under
§ 1499(c).  To the extent the ruling in Detroit Zoological has any relevance to this case, its
holding does not require the court to find that amendment of the seizure notices rendered the
original seizure a non-final determination for purposes of § 1499(c).

In sum, having considered the test described in <u>Tempco</u> and <u>International Maven</u>, the facts presented by H & H in support of jurisdiction under 1581(a), and H & H's additional legal arguments, the court finds that H & H has not demonstrated that an exclusion of the merchandise took place.  The court is therefore without jurisdiction to hear H & H's claims under 28 U.S.C. § 1581(a).

**III.     The Court Lacks Jurisdiction Under § 1581(i)**

H & H also asserts jurisdiction under 28 U.S.C. § 1581(i)(4), which gives the Court of International Trade exclusive jurisdiction over any civil action brought against the United States "that arises out of any law of the United States providing for . . . administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section."  28 U.S.C. § 1581(i)(4).  H & H appears to assert that Customs's failure to provide "fair notice to the importer as to the basis for the exclusion of the subject merchandise as well as a basis for its detention" involves the administration and enforcement of matters specified in § 1581(i)(4).  (Pl.'s Resp. Def.'s Mot. Dismiss 27.)  Having found that no exclusion took place, the court will focus on H & H's contention that Customs failed to provide notice of detention of the merchandise, as required under 19 U.S.C. § 1499(c)(2) and implemented by 19 C.F.R. § 151.16(b) (2006).

Through 28 U.S.C. § 1581(i), Congress intended "to avoid conflict in jurisdiction with the district courts and to ensure judicial review for various unspecified challenges to enforcement of import laws."  <u>Associacao Dos Industriais de Cordoaria e Redes v. United States</u>, 17 CIT 754, 757, 82 F. Supp. 978, 982–83 (1993) [hereinafter <u>Cordoaria</u>].  Such unspecified actions include failures to comply with relevant statutes and regulations governing the

"administration and enforcement" of an actions described in 1581(a)–(c) or (i)(1)–(3).  See, Nakajima All Co., Ltd. v. United States, 12 CIT 585, 590–92, 691 F. Supp. 358, 363–64 (1988) (finding § 1581(i)(4) jurisdiction available for mandamus action to compel the Department of Commerce to comply with statutory deadline in an administrative review of an antidumping duty order); see also Cordoaria, 17 CIT at 758, 82 F. Supp. at 983–84 (finding jurisdiction under § 1581(i)(4) to consider harassment by antidumping petitioners and "to address alleged failings in the proper administration of the laws relating to unfair trade and providing for revenue from imports or for other tariffs").

The thrust of this aspect of H & H's complaint is clear: Customs allegedly failed to provide notice of detention prior to improperly seizing the merchandise as adulterated and misbranded or for bearing a counterfeit trademark.  H & H further seeks to overturn Customs's seizure because "[t]he uncontroverted facts in this matter more readily demonstrate that the

Nevertheless, the Supreme Court has made clear that "Congress did not commit to the Court of International Trade's exclusive jurisdiction every suit against the Government challenging customs-related laws and regulations."  See K-Mart Corp. v. Cartier, Inc., 485 U.S. 176, 188 (1988).  Section 1581(i)(4) only extends residual jurisdiction to the administration and enforcement of matters identified in the rest of § 1581.  See 28 U.S.C. § 1581(i)(4).  Challenges to Customs's administration and enforcement of actions not described in § 1581 cannot provide jurisdiction under § 1581(i)(4).  Thus, "[w]here jurisdiction is asserted under [§] 1581(i), the court must not accept the allegations at face value but must determine the thrust of the complaint."  Montgomery Ward & Co. v. Zenith Radio Corp., 69 CCPA 96, 106, 673 F.2d 1254, 1261 (1982).

subject articles are simply unprotected 'gray market' goods." (Pl.'s Resp. Def.'s Mot. Dismiss 25.) Count One of the Complaint challenges as arbitrary and capricious Customs's determination that the merchandise was "adulterated and misbranded." (Compl. ¶ 28.) Count Three asserts that the merchandise does not involve "a serious violation of an FDA safety standard," "importation of a protected grey market product," or "violation of a protected trademark." (Compl. ¶¶ 37–38.) To remedy these violations, H & H asks the court to order that "the merchandise seized . . . be immediately released." (Compl. 12.)

Because "[t]rademark law is purely domestic, not 'international trade law,'" CDCOM, 21 CIT at 440, 963 F. Supp. 1218, where a seizure has occurred the court has declined to exercise jurisdiction over such disputes, even if an exclusion has also taken place. See, e.g., Genii Trading Co. v. United States, 21 CIT 195, 197 (1997) (finding no jurisdiction where claim "involves a seizure based on a claim of a violation of trademark law"); Tempco, 21 CIT at 194, 957 F. Supp. at 1279 (same). Here there was no exclusion at all. To the extent that H & H's Complaint seeks a ruling on a substantive matter of trademark law in connection with an alleged unlawful seizure of the merchandise, the court will not assert jurisdiction. The failure to provide a detention notice under 19 U.S.C. § 1499(c)(1), in this case, relates to the administration and enforcement of the seizure of allegedly counterfeit merchandise pursuant to 19 U.S.C. § 1526(e), not the denial of a protest of an exclusion, or any other action described in § 1581.[9]

_____

[9] H & H cites to Shaper Manufacturing Co., Division of Kusan, Inc. v. Regan, 5 CIT 266, 566 F. Supp. 894 (1983), but that case does not compel a different conclusion. In Shaper, the plaintiff posted a bond upon demanding exclusion of imported goods that allegedly infringed its trademarks. Id. After inspection, Customs found that each of the shipments contained some infringing articles, and some non-infringing articles. Id. at 267, 566 F. Supp. at 895. The

(continued . . .)

Acceptance of jurisdiction over the § 1499(c) issue would not only conflict with the

language of § 1581(i)(4), but also with the policy underlying the grant of residual jurisdiction

made in the Customs Courts Act.  Pub. L. No. 96-417, 94 Stat. 1727 (1980).  The Court of

International Trade was given residual jurisdiction to provide a "comprehensive system of

judicial review of civil actions arising from import transactions," while clarifying the "ill-defined

division of jurisdiction between the Customs Court and the federal district courts."  Customs

Courts Act of 1980, H.R. Rep. No. 96-1235, at 20 (1980), as reprinted in 1980 U.S.C.C.A.N.

3729, 3731.  Congress not only expanded the Court of International Trade's jurisdiction, but also

made it exclusive in order to "eliminate the confusion . . . as to the demarcation between the

jurisdiction of the district courts and the Court of International Trade."  H.R. Rep. No. 96-1235,

at 47, 1980 U.S.C.C.A.N. at 3759.  Likewise, 28 U.S.C. § 1356 was passed as part of the same

---

plaintiff sought to withdraw its bonds.  Id.  The plaintiff also signed, per Customs's request, an agreement to hold Customs harmless for any consequence of returning the bonds and the release of the detained merchandise.  Id.  The importer, however, did not agree to hold Customs harmless for the detention of its non-infringing goods, as required by 19 C.F.R. § 133.43 (1983).  Id. at 566, F. Supp. at 896.  Consequently, when the plaintiff requested withdrawal of its bonds, the merchandise was released, and the bonds were ordered transmitted to the importer, not the plaintiff.  The plaintiff sought to block transmission of the bonds to the importer under section 1581(i)(4).  Id.

Acknowledging that one paragraph in the plaintiff's complaint sought reversal of Customs's finding that some of the goods were non-infringing, the court nonetheless found that the "thrust of the instant action and the relief sought is . . . the return of the bonds to the plaintiff pursuant to its request for withdrawal."  Id. at 271, 566 F. Supp. at 899.  In finding jurisdiction under section 1581(i)(4), the court noted that the action involved the enforcement of regulations related to the exclusion of merchandise because of "its piratical character."  Id. at 271, 566 F. Supp. at 899; see also id. at 270, 566 F. Supp. at 897–98 ("[T]his court can discern no purpose in [section 133.43's] promulgation other than to serve as a corollary to the acknowledged primary functions of the agency in determining whether merchandise seeking importation should be excluded . . . .").  Unlike this case, Shaper involved the administration and enforcement of regulations incident to the exclusion of goods, not a seizure of counterfeit merchandise.  Id. at 271, 566 F. Supp. at 899.

legislation to "clarif[y] the demarcation between the jurisdiction of the Court of International

Trade and the United States district courts."  Id. at 67, 1980 U.S.C.C.A.N. at 3778.

A decision that the court has exclusive jurisdiction over all cases involving Customs's

alleged failure to comply with § 1499(c) would provide neither comprehensive review nor a

clear boundary between this Court and the district courts.  If the court were to rule against H & H

on its procedural objection, the court would have exercised exclusive jurisdiction over the

application of § 1499(c) only to return the case to the district courts to consider the validity of

the underlying seizure.  District courts faced with questions of § 1499(c) compliance in seizure

cases would be obliged to send portions of those cases to this court.  Rather than providing a

single forum, the court would have needlessly required the piecemeal resolution of challenges to

seizures.  The court therefore concludes that it lacks exclusive jurisdiction under § 1581(i)(4)

over Customs's alleged failure to comply with § 1449(c)(1) in this action.

**IV.     H & H's Motion to Expedite Discovery**

H & H has also submitted a Motion for an Expedited Litigation Schedule pursuant to

USCIT R. 3(g).  From counsel's arguments at a hearing on this motion, it is apparent that H & H

has requested that at least some "expedited discovery" take place prior to ruling on the Motion to

Dismiss.

Under the Federal Rules of Civil Procedure, in reviewing a motion contesting the facts

supporting jurisdiction under Rule 12(b)(1), "a trial court has wide discretion to allow affidavits,

documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts."[10]

---

[10] In interpreting the USCIT Rules, the court may refer to the interpretation of a Federal
(continued . . .)

Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990).  For guidance in

determining whether discovery should be permitted prior to ruling on a Rule 12(b)(1) motion, a

court may look to the standards applied under Federal Rule of Civil Procedure 56(f).[11]  See

Gualandi v. Adams, 385 F.3d 236, 244 (2d Cir. 2004).  Under Rule 56(f), "[a] party may not

simply assert that discovery is necessary and thereby overturn summary judgment when it failed

. . . to set out reasons for the need for discovery in an affidavit."  Keebler Co. v. Murray Bakery

Prods., 866 F.2d 1386, 1389 (Fed. Cir. 1989).  The allegations in the affidavit must allege more

than mere "possession . . . of 'certain information' and 'other evidence'" that might reveal a

genuine issue of material fact.  Id.  Therefore, "summary judgment need not be denied merely to

satisfy a litigant's speculative hope of finding some evidence that might tend to support a

complaint."  Brubaker Amusement Co., v. United States, 304 F.3d 1349, 1361 (Fed. Cir. 2002)

(citation and quotation omitted).

     The Federal Circuit has not provided a clear test used to evaluate Rule 56(f) affidavits,

but the Court of Federal Claims has constructed a test based on the available precedents of the

Federal Circuit and the tests employed in other circuit courts.  See Theisen Vending Co., v.

United States, 58 Fed. Cl. 194, 197–98 (2003).  The court in Theisen adopted a five-element test,

requiring an affidavit to "(1) specify the particular factual discovery being sought, (2) explain

how the results of the discovery are reasonably expected to engender a genuine issue of material

---

Rule of Civil Procedure that is materially the same.  Former Employees of Tyco Elecs. v. U.S. Dep't of Labor, 259 F. Supp. 2d 1246, 1251 (CIT 2003).  USCIT R. 12(b)(1) is materially the same as Federal Rule of Civil Procedure 12(b)(1).

    [11]  USCIT R. 56(f) is materially the same as Federal Rule of Civil Procedure 56(f).

fact, (3) provide an adequate factual predicate for the belief that there are discoverable facts sufficient to raise a genuine and material issue, (4) recite the efforts previously made to obtain those facts, and (5) show good grounds for the failure to have discovered the essential facts sooner." Id. at 198.

The Theisen test appears to be a fair amalgam of the relevant case law, including that of the Federal Circuit.  As a matter of procedure, courts have emphasized the importance of an affidavit, though this may be excused under certain circumstances.  See, e.g., Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244–45 (4th Cir. 2002); Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 846 (3d Cir. 1992).  Courts require a specific description of the facts sought prior to a ruling.  See Gualandi, 385 F.3d at 244 (2d Cir. 2004); Vivid Tech., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 809 (Fed. Cir. 1999) (interpreting the First Circuit's requirements for an affidavit under Rule 56(f)); Dowling v. City of Phila., 855 F.2d 136, 140 (3d Cir. 1988) (requiring an affidavit stating "what particular information is sought").  Courts, including the Federal Circuit, agree that the affidavit must state how the facts will lead to discovery of genuine issues of material fact.  See Keebler, 866 F.2d at 1389 n.5 (citing Burlington Factory Warehouse Corp. v. Esprit de Corp., 769 F.2d 919, 926 (2d Cir. 1985)); see also Baker v. Am. Airlines, Inc., 430 F.3d 750, 756 (5th Cir. 2005); Gualandi, 385 F.3d at 244; Vivid Tech., 200 F.3d at 809. Courts also generally require a description of the efforts made to obtain necessary information and why those efforts were unsuccessful.  See Baker, 430 F.3d at 756 (requiring a showing of "why [a party] is currently unable to present evidence creating a genuine issue of material fact); Gualandi, 385 F.3d at 244; Vivid Tech., 200 F.3d at 809; Dowling, 855 F.2d at 140.

Finally, some courts require an express showing that the facts sought under Rule 56(f)

are likely to exist and are likely to be discovered.  See Vivid Tech., 200 F.3d at 809 (requiring

affiant to "present a plausible basis for the belief that there are discoverable facts sufficient to

raise a genuine and material issue").  The Court of Federal Claims adopted this requirement.

This appears correct because the Federal Circuit has emphasized that a party must show more

than a "speculative hope of finding evidence to support their claim."  Brubaker, 304 F.3d at 1361

(quotation omitted).  The Federal Circuit's decision to grant additional discovery in Opryland

USA Inc. v. Great Am. Music Show, Inc., 970 F.2d 847, 852 (Fed. Cir. 1992), also supports the

inclusion of this factor.  In that case, the plaintiff sought additional discovery regarding the

public's confusion regarding the relationship between its "Grand Old Opry" and the defendant's

"Carolina Opry."  Id. at 849.  The Federal Circuit found that the plaintiff's affidavit averring that

it had made significant exposure of its trademark showed more than a "speculative hope" that

discovery would reveal that its trademark was well-known to the relevant public, a fact essential

to its claim.  Id. at 852.  The plaintiff was therefore permitted to conduct additional discovery

regarding the public's perception that the plaintiff's "Grand Old Opry," supported or endorsed

the defendant's "Carolina Opry."  Id. at 852–53.  It thus appears that the Federal Circuit

considers whether the evidence supports a plausible belief that discovery would be successful

when determining whether additional discovery is merited under Rule 56(f).  The court therefore

adopts the factors listed by the Court of Federal Claims in Theisen.

Although H & H has not submitted an affidavit, the court provided H & H an opportunity

to identify the specific information it would request in discovery in its response brief opposing

the Government's Motion to Dismiss.  H & H submitted thirty-two wide-ranging interrogatories

attached to its brief, which it proposes to submit to the government prior to a ruling on the

Motion to Dismiss.  (Pl.s' Resp. Def.'s Mot. Dismiss Ex. E.)  In addition to these interrogatories, H & H appears to have identified two areas of discovery it would like to pursue.  First, H & H references a "phantom exhibit" in the form of a preliminary report from Johnson & Johnson indicating that the sample boxes taken from the merchandise were counterfeit.  (Pl.'s Resp. Def.'s Mot. Dismiss 20.)  Second, H & H states that documents it received from Customs in response to its protest were altered.[12]  (Pl.'s Resp. Def.'s Mot. Dismiss 25.)  According to H & H, these "curious cross-outs, lineouts, and modifications on the face of the protest, bring[] the true nature of customs [sic] actions into deeper question."  (Pl.'s Resp. Def.'s Mot. Dismiss 25.)  H & H further claims that an "anomalous dating sequence suggested by the lengthy gap between the dates reflected on the document and the considerably later date that the document was received by counsel" may, if investigated, reveal an exclusion of the merchandise prior to its seizure.  (Pl.'s Resp. Def.'s Mot. Dismiss 25.)

With respect to H & H's claim regarding the letter from Johnson & Johnson, it appears that the Response Brief explains what information it seeks, the efforts H & H has made to obtain this information, and the refusal of the Government to provide that information.  (Pl.'s Resp. Def.'s Mot. Dismiss 20.)  The Response Brief therefore meets the first, fourth and fifth requirements for a Rule 56(f) motion.  However, H & H has not explained how discovery of this report might show that an exclusion took place prior to seizure of the merchandise, thus failing to meet the second factor.   The facts surrounding the "phantom exhibit" therefore do not justify additional discovery prior to ruling on the motion to dismiss.

---

[12]  Specifically, the response form was apparently marked "denied" but later changed to "rejected" because the merchandise had been seized.  (See Compl. Ex. 18.)

With respect to the alterations appearing on the protest form, and the delay in sending Customs's response to the protest to counsel, H & H has satisfied the requirements that it state the information it seeks to discover, the efforts it has made to obtain such information, and why its efforts were unsuccessful. In explaining the significance of these facts to the question of jurisdiction, however, H & H only states that these changes and the delay in response draw the "true nature" of Customs's actions into "deeper question." (Pl.'s Resp. Def.'s Mot. Dismiss 25.) H & H does not explain how discovery related to these questions would likely result in evidence that would tend to show an exclusion took place without H & H ever becoming aware. H & H's Response Brief therefore fails to make the necessary showing under Rule 56(f).

Finally, the court notes that H & H's proposed interrogatories are not tailored to request the information identified in its Response Brief. The interrogatories do not focus on the question of jurisdiction, but rather seek discovery related to all aspects of H & H's claims, including information related to the treatment of its goods as counterfeit or gray-market merchandise and the alleged adulteration and misbranding of the goods. Such broad proposed discovery fails to show how the results of discovery will likely demonstrate facts supporting the court's jurisdiction. In sum, H & H's request for discovery is no more than a claim that some evidence of an exclusion might appear if discovery were granted. The court finds that this "speculative hope" does not merit discovery prior to ruling on the Government's Motion to Dismiss.

## CONCLUSION

In accordance with the foregoing opinion, Defendant's Motion to Dismiss Count Seven of the Amended Complaint is GRANTED. Defendant's Motion to Dismiss the original Complaint is also GRANTED. Plaintiff's Motion to Compel Defendant to Answer Plaintiff's

Amended Complaint and Limit Time to Answer is DENIED.  Plaintiff's Motion For an

Expedited Litigation Schedule is also DENIED, and this action is DISMISSED in its entirety.


                                                                              ____/s/ Jane A. Restani_____
                                                                              Jane A. Restani
                                                                               Chief Judge

Dated:  This 23rd day of May, 2006.
            New York, New York

**ERRATA**

Please make the following changes to <u>H & H Wholesale Services, Inc. v. United States</u>, No. 05-00636, Slip Op. 06-77 (Ct. Int'l Trade May 23, 2006):

- Page 9, line 1: replace "No Seizure Occurred" with "No Exclusion Occurred"

- Page 12, line 4: replace "a Seizure" with "an Exclusion"

May 26, 2006.